UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREG PFEIFER and ANDREW DORLEY,<br><br>                         Plaintiffs,<br><br>-vs.-<br><br>WAWA, INC., RETIREMENT PLANS COMMITTEE OF WAWA, INC., JARED G. CULOTTA, MICHAEL J. ECKHARDT, JAMES MOREY, CATHERINE PULOS, HOWARD B. STOECKEL, DOROTHY SWARTZ, RICHARD D. WOOD, JR. and KEVIN WIGGINS.<br><br>                         Defendants,<br><br>and<br><br>WAWA, INC. EMPLOYEE STOCK OWNERSHIP PLAN.<br><br>                         Nominal Defendant. | **Case No. 16-00497-PD**<br><br><br>**AMENDED COMPLAINT --<br>CLASS ACTION** |

Plaintiffs GREG PFEIFER and ANDREW DORLEY, in their individual capacity and on behalf of the Class, by way of Complaint against Defendants allege as follows:

**INTRODUCTION**

1.      This is an action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., on behalf of a Class of former employee participants (and their beneficiaries) in the WAWA, INC. EMPLOYEE STOCK OWNERSHIP PLAN (the "ESOP" or "Plan") to require Defendants to make good to the Plan, Plaintiffs, and Class Members losses resulting from fiduciary violations, to restore to the Plan any profits that have been made by the breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA. This case arises out of the adoption and

1

implementation of an amendment to the Plan in 2015 that eliminated the right of Plaintiffs and

the Class to hold Wawa stock in the ESOP and liquidated their shares at an improper price.   As a

remedy, Plaintiffs seek to require Defendants to make good to the Plan, any losses resulting from

fiduciary violations, to restore to the Plan any profits made by the breaching fiduciaries through

the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to

redress violations and enforce the provisions of Title I of ERISA.

2.        Plaintiffs GREG PFEIFER and ANDREW DORLEY were formerly employed by

WAWA, INC. ("WAWA"), which sponsors the WAWA, INC. EMPLOYEE STOCK

OWNERSHIP PLAN (the "ESOP" or "Plan"). The proposed Class consists of Terminated

Employee Participants in the ESOP (and their beneficiaries) who, as alleged below, have been

deprived of promised benefits as a result of violations of ERISA by Defendants. "Terminated

Employee Participants" are ESOP participants with vested account balances as of August 30,

2015 whose employment with WAWA terminated prior to January 1, 2015 for any reason other

than retirement, death or total disability.

3.        The ESOP's primary asset is its equity holdings in WAWA. The ESOP allocates

shares of Wawa stock to the individual accounts of Plan participants. The ESOP has long been

an important part of the compensation package for WAWA employees. Plaintiffs and other

members of the Class contributed to WAWA's success, and were able to share in that success as

the value of the Wawa stock holdings in their individual ESOP accounts grew over time.

4.        Until 2015, the written instrument of the ESOP permitted Terminated Employee

Participants to continue to hold Wawa stock in their ESOP accounts after their employment

terminated. Plaintiffs and other Terminated Employee Participants had the same benefit

entitlements as participants who retired from WAWA on or after the Plan's normal retirement

age of 62. In communications to Plaintiffs and other Plan participants during the course of their employment, including the updated Summary Plan Descriptions, WAWA promised that their right to continue to hold Wawa stock after termination of employment would not be taken away.

5.      Until at least August 30, 2015, Plaintiffs and over 3,000 other Terminated Employee Participants continued to hold their Wawa stock after terminating employment. In recent years, both before and after the 2015 Amendment, the share price of Wawa stock has risen sharply.

6.      On or about September 11, 2015, however, WAWA forced Plaintiffs and other Terminated Employee Participants to sell their Wawa stock to WAWA, closed their individual accounts, and transferred their liquidated assets out of the ESOP (the "September 11, 2015 forced sale," "forced sale," or "forced buyout"). This forced sale violated ERISA and breached promises that WAWA had made to Plaintiffs and other Terminated Employee Participants.  In addition, Defendants used a stale valuation in setting the share price for Wawa stock in the September 11, 2015 forced sale.

7.      Plaintiffs and other Terminated Employee Participants have been divested of the benefit and right to continue to hold Wawa stock in their WAWA ESOP accounts.  As a result of Defendants' fiduciary breaches and violations of ERISA, Plaintiffs and the Class received less than the fair market value of their Wawa stock in the forced sale and have lost out on the continued appreciation in value of Wawa stock, dividends and tax distributions paid to Wawa shareholders, and the opportunity to benefit from future dividends, tax distributions, and appreciation in value of Wawa stock.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

3

1331, and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

9.     This Court has personal jurisdiction over Defendants because they transact

business in, and have significant contacts with, this District, and because ERISA § 502(e)(2), 29

U.S.C. § 1132(e)(2) provides for nationwide service of process.

10.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C.

§ 1132(e)(2), because the Plan is administered in part in this District, the breaches occurred, in

whole or in part, in this District, and Defendants may be found in this District.

## PARTIES

### Plaintiffs

11.     Plaintiff GREG PFEIFER is and has been a participant, as defined in ERISA

§ 3(7), 29 U.S.C. § 1002(7), in the ESOP at all relevant times. Plaintiff PFEIFER was employed

by WAWA from in or about 1992 until in or about 2009. Plaintiff PFEIFER originally worked in

a Wawa store and was promoted to work in the Point of Sale Department at the Corporate Center

in Wawa, Pennsylvania. Plaintiff PFEIFER resides in West Chester, Pennsylvania.

12.     Plaintiff ANDREW DORLEY is and has been a participant, as defined in ERISA

§ 3(7), 29 U.S.C. § 1002(7), in the ESOP at all relevant times. Plaintiff DORLEY was employed

by WAWA from in or about 1994 until in or about 2007. Plaintiff DORLEY originally worked

in a Wawa store and was promoted to work as a merchandising manager at the Corporate Center

in Wawa, Pennsylvania. Plaintiff DORLEY resides in Exton, Pennsylvania.

### Defendants

13.     Defendant WAWA, INC. ("WAWA") is a New Jersey corporation headquartered

in Wawa, Pennsylvania. WAWA is the Sponsor of the ESOP within the meaning of ERISA §

3(16)(B), 29 U.S.C. § 1002(16)(B). At all relevant times, WAWA was a fiduciary of the ESOP

4

under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the ESOP, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.  Pursuant to Section 9.1. and 10.1 of the ESOP Plan document, WAWA, acting by appropriate resolution of its Board of Directors, had the power and responsibility for appointing and removing the Trustee and Administrator of the ESOP, and appointing a new Trustee or Trustees and/or Administrator in their place as well as entering into any Trust Agreement. By virtue of these powers, Defendant WAWA had the fiduciary responsibility to monitor the Trustee and Administrator and remedy any fiduciary violations committed by the Trustee and/or Administrator. Defendant WAWA at all relevant times was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14).

14.     Defendant RETIREMENT PLANS COMMITTEE OF WAWA, INC. ("COMMITTEE") is and has been the named fiduciary of the ESOP and the "administrator" of the ESOP within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), at all relevant times.  At all relevant times, Defendant COMMITTEE was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP. Defendant COMMITTEE at all relevant times was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14). Upon information and belief, the COMMITTEE has six members who are Wawa employees appointed by the Board of Directors of WAWA. Defendant COMMITTEE is an unincorporated organization or association located in Wawa, Pennsylvania.

5

15.     Defendant JARED G. CULOTTA ("CULOTTA") was a member of the COMMITTEE from at least December 31, 2014 and throughout 2015.  During that time, CULOTTA was also the Treasurer and Assistant Secretary of Wawa.  At all relevant times, Defendant CULOTTA was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) as a result of his membership on the COMMITTEE and  because he exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

16.     Defendant MICHAEL J. ECKHARDT ("ECKHARDT") was a member of the COMMITTEE from at least December 31, 2014 and throughout 2015.  During that time, ECKHARDT was the current Vice President of Legal and Risk Management and Secretary of WAWA.  Defendant ECKHARDT became General Counsel of Wawa in 2011.  Before joining WAWA, Defendant ECKHARDT was an attorney at Dechert LLP and Pepper Hamilton LLP in the Corporate and Securities groups.   At all relevant times, Defendant ECKHARDT  was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as a result of his membership on the COMMITTEE and because he exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

17.     Defendant JAMES MOREY ("MOREY") was a member of the COMMITTEE from at least December 31, 2014 and throughout 2015.  During that time, MOREY was also the Senior Vice President, Chief Operations Officer of WAWA.  Between at least 2012 through at

6

least 2013, Defendant MOREY was the Chief Financial Officer of WAWA.  At all relevant

times, Defendant MOREY was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C.

§ 1002(21)(A), a result of his membership on the COMMITTEE and because he exercised

discretionary authority or discretionary control respecting management of the ESOP and/or

exercised authority or control respecting management or distribution of the ESOP's assets,

and/or had discretionary authority or discretionary responsibility in the administration of the

ESOP.

18.    Defendant CATHERINE PULOS ("PULOS") was the Chairperson of the

COMMITTEE from at least December 31, 2014 and throughout 2015. PULOS has been the

Senior Vice President and Chief Financial Officer of WAWA since at least 2014.  Defendant

PULOS has been the Chief People Officer of WAWA since 2010.  Defendant PULOS was the

Controller for WAWA from 2007 to 2010. Prior to that time, PULOS spent seven years as an

Internal Audit Director for WAWA.  At all relevant times, Defendant PULOS was a fiduciary

within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), ), a result of her

membership on the COMMITTEE and because she exercised discretionary authority or

discretionary control respecting management of the ESOP and/or exercised authority or control

respecting management or distribution of the ESOP's assets, and/or had discretionary authority

or discretionary responsibility in the administration of the ESOP.

19.    Defendant DOROTHY SWARTZ ("SWARTZ") was a member of the

COMMITTEE from at least December 31, 2014 and throughout 2015.  SWARTZ has been the

Senior Director of Talent Management and Development of WAWA since 1996.  Defendant

SWARTZ was the Director of Store Operations for WAWA between 2004 and 2009.  At all

relevant times, Defendant SWARTZ was a "fiduciary" within the meaning of ERISA § 3(21)(A),

7

29 U.S.C. § 1002(21)(A) a result of her membership on the COMMITTEE and because she exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

20.     Defendant KEVIN WIGGINS ("WIGGINS") was a member of the COMMITTEE from at least December 31, 2014 and throughout 2015.  WIGGINS was the Senior Director of Finance for WAWA in 2015.  Defendant WIGGINS has been the Controller of WAWA since 2012.  At all relevant times, Defendant WIGGINS  was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as a result of his position on the COMMITTEE and because he exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

21.     The COMMITTEE, CULOTTA, ECKHARDT,  MOREY, PULOS, SWARTZ, and WIGGINS are collectively referred to as the COMMITTEE DEFENDANTS.

22.     Defendant RICHARD D. WOOD, JR. ("WOOD") has been a Trustee of the ESOP within the meaning of ERISA §403(a), 29 U.S.C. § 1103(a), from at least December 31, 2014 and throughout 2015.  Defendant WOOD is and was during 2015 Chairman of the Board of Directors of Defendant WAWA. At all relevant times, Defendant WOOD was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as a result of his position as Trustee of the ESOP and  because he exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or

8

distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP. The Trustees are appointed by WAWA acting through its Board of Directors.

23.     Defendant HOWARD B. STOECKEL ("STOECKEL") has been a Trustee of the ESOP within the meaning of ERISA §403(a), 29 U.S.C. § 1103(a),from at least December 31, 2014 through 2015. Defendant STOECKEL is the former President of Defendant WAWA and currently Vice Chairman of the Board of Directors of Defendant WAWA. At all relevant times, Defendant STOECKEL was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as a result of his position as Trustee of the ESOP and  because he exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP. The Trustees are appointed by WAWA acting through its Board of Directors.

24.     Defendants WOOD and STOECKEL are collectively referred to as the TRUSTEE DEFENDANTS.

**Nominal Defendant**

25.     The WAWA, INC. EMPLOYEE STOCK OWNERSHIP PLAN is an employee benefit plan as defined by ERISA § 3(3), 29 U.S.C. § 1002(3), is a defined contribution plan or individual account plan within the meaning of ERISA § 3(34), 29 U.S.C. §1002(34), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).  The ESOP is also an employee stock ownership plan ("ESOP") under ERISA § 407(d)(6) that was intended to meet the requirements of Section 4975(e)(7) of the Internal Revenue Code (the "Code") and IRS Regulations § 54.4975-11.  The ESOP is administered in part in Wawa, Pennsylvania.

## FACTUAL ALLEGATIONS

26.     Defendant WAWA established the ESOP in 1992. Over the years, the ESOP has purchased additional shares of Wawa stock from other investors. The ESOP now owns approximately 41% of WAWA. Prior to the forced buyout of Terminated Employee Participants, the ESOP owned approximately 44.1% of WAWA. The ESOP's stock holdings are currently valued at over $1 billion.

27.     Most of the other shares of Wawa stock are owned by members of the Wood family, including Defendant WOOD. The Wood family, including Defendant WOOD, currently owns approximately 50.2% of WAWA.  Prior to the forced buyout of Terminated Employee Participants, the Wood family, including Defendant WOOD, owned approximately 47.2% of WAWA. Thus, the Wood family became majority owners of WAWA as a result of the forced sale.

28.     The ESOP is a leveraged ESOP because it has borrowed money to purchase shares of Wawa stock from other shareholders. As of December 31, 2014, the ESOP owed over $200 million to WAWA for acquisition loans used to finance the purchase of Wawa stock from other shareholders.

29.     Plaintiff PFEIFER was employed by WAWA from in or about 1992 until in or about 2009.  When Plaintiff's employment ended, he decided to continue to hold the Wawa stock holdings in his ESOP account.

30.     Plaintiff DORLEY was employed by WAWA from in or about 1994 until in or about 2007. When Plaintiff's employment ended, he decided to continue to hold the Wawa stock holdings in his ESOP account.

2131504.1

31.     At all times during Plaintiffs' employment with WAWA, their ESOP benefits were an important part of their compensation package. As stated by Defendants WOOD and STOECKEL in an August 10, 2015 letter to Plaintiffs and other members of the Class, "Wawa's ESOP was designed to reward associates for hard work and loyalty by sharing directly in the success of the Company. Today, Wawa's ESOP is a highly valued Plan and a core part of our culture and total rewards program."

32.     At all times during Plaintiffs' employment with WAWA, the Plan document for the ESOP provided that Terminated Employee Participants in the ESOP had the same benefit entitlements as participants who retired from WAWA on or after the Normal Retirement Date of age 62. Both Terminated Employee Participants and retiree participants had the right to select a benefit commencement date and elect to receive their benefits either in a single lump sum payment or in equal periodic installment payments over any period not to exceed ten (10) years.

33.     Defendants provided Summary Plan Descriptions (SPDs) and updated SPDs to Plaintiffs and other Class Members during the course of their employment. The SPD was the primary source of information about the ESOP for Plaintiffs and other participants.

34.     At all times during Plaintiffs' employment with WAWA, the SPD stated that the vested benefits of Terminated Employee Participants would be "paid in the same form and manner as retirement benefits" as described in the Section of the SPD titled "Retirement Benefits." The SPD further stated that Terminated Employee Participants with ESOP account balances greater than $5,000 could continue to hold Wawa stock in their ESOP accounts until age 68, at which time they could elect to receive payment of retirement benefits in equal installments up to ten (10) years or in a single lump sum, i.e. the same retirement benefit options available to ESOP participants who retired from WAWA at the normal retirement age of 62.

11

35.     Pursuant to Article VI of the ESOP Plan Document, Terminated Employee Participants and retiree participants had a put option which they could exercise at any time prior to age 68, at which time they were required to exercise their put option. As a result of the put option, both Terminated Employee Participants and WAWA retirees were able to share in the continued success of WAWA. The purpose of this provision was a recognition of the contribution that former employees had made to the Company during their years of service and to provide them with retirement benefits, as explained by then-President and CEO STOECKEL in the Quarterly Report Owners' Update dated September 26, 2010: "Our associates' compensation and *future financial security* is directly tied to company profitability." (Emphasis added.) As this provision gave Terminated Employee Participants the choice of whether to retain or divest themselves of Wawa stock following the termination of their employment, the members of the Class had chosen to retain their Wawa stock in the ESOP.

36.     WAWA has acknowledged in communications with Plaintiffs and the Class that WAWA's recent success is built on many years of hard work by its employees. For example, in the Owners' Update Quarterly Report dated June 28, 2009, then-President & CEO STOECKEL stated that "These results [the Company's strong performance in Q2 2009] are built on the reservoir of trust we have established with our customers during the past 45 years…."

37.     In communications to ESOP participants, including members of the Class, WAWA assured ESOP participants that they would remain owners and be able to rely on their ESOP benefits when they retired. For example, in the Quarterly Report Owners' Update dated September 26, 2010, which celebrated the ESOP and called the ESOP "one of our most treasured employee benefits," WAWA chose to publish selected responses from certain employees about what the ESOP meant to them including the following: "I share in the company's growth through

12

ownership interest in common stock of the company. *Also ESOP profits will provide an important supplement to my 401k for retirement.*" (Emphasis added.)  Another associate responded "*Security for my retirement* and investing in a company that I respect and believe in." (Emphasis added.) Similarly, another associate stated "I will have some money *when I retire* to pay any living expenses." (Emphasis added.)  Another associate stated "I am an owner!" and the quarterly report features photos of associates holding signs saying "I'M A PROUD OWNER."

38.     At all relevant times, the SPD for the ESOP promised that "no amendment to the Plan will reduce the benefit you have already earned, *or divest you of any entitlement to a benefit.*" (Emphasis added).

39.     Remaining a closely-held corporation has always been central to WAWA's corporate culture. In his Report to Owners at the Wawa Annual Meeting on May 2, 2013, Chris Gheysens, President and CEO of WAWA, listed "[t]hree deeply held beliefs" that "act as [WAWA's] moral compass" – "private ownership, shared ownership and servant leadership."

40.     In 2004, WAWA was forced to buy out a large minority shareholder, Claneil Enterprises, Inc. ("Claneil"), in order to avoid a public stock offering. WAWA had to turn to its employees to come up with the necessary funds to buy out Claneil. WAWA offered eligible participants in the Wawa Savings and Profit Sharing Plan (ESPSP), including Plaintiffs, the opportunity to transfer all or part of their ESPSP account balances to the ESOP, and use this money to purchase additional shares of Wawa stock for their ESOP accounts. Plaintiffs and other participants transferred all or a portion of their ESPSP account balances to the ESOP, and used this money to purchase additional shares of Wawa stock. All told, WAWA employees transferred approximately $60 million from their ESPSP accounts to the ESOP to fund the Claneil buyout.

41.     WAWA provided Plaintiffs and other eligible participants in the ESPSP an Employee Offering Memorandum dated February 5, 2004 ("Offering Memorandum"). The Offering Memorandum directed Plaintiffs and other eligible participants to review the SPD to learn the terms and conditions of the ESOP. WAWA attached a copy of the SPD to the Offering Memorandum. Like other SPDs provided to Plaintiffs, the SPD attached to the Offering Memorandum represented and promised that "no amendment to the Plan will reduce the benefit you have already earned, *or divest you of any entitlement to a benefit.*" (Emphasis added).

42.     Since it was a closely-held company, WAWA had considered converting from a C-Corporation to an S-Corporation on several occasions over the years.  In 2013, WAWA revisited this issue. WAWA's Board of Directors appointed a Special Committee to evaluate whether the WAWA should convert to an S-Corporation.

43.     In the "Owners' Update Quarterly Report" dated September 28, 2014, WAWA President and CEO Chris Gheysens stated "as you read this letter, Wawa has begun the process of converting from a C-Corporation to an S-Corporation, an effort that your management team believes has the potential to be one of the largest value-creating events in Wawa's history. The benefits of the conversion are immediate, significant and long-term, *translating into approximately $1 billion in incremental value to all stakeholders over the next ten years.* Through the benefits provided by being an S-Corporation, we will be able to strengthen our ESOP, maintain our aggressive expansion plans and bring more innovations to market." (Emphasis added.)

44.     In his Letter to Owners in WAWA's Owners' Update Year End Report dated December 28, 2014, President Gheysens stated "By converting to an S-Corporation, we have created tremendous value for both your Company and its many stakeholders." These

14

stakeholders included Plaintiffs and other Class members.

45.     WAWA converted from a C-Corporation to an S-Corporation following a merger

transaction in December 2014. As a result of this conversion, WAWA no longer had to pay

federal corporate income tax as of 2015.

46.     As part of the merger transaction, WAWA shareholders who held shares outside

the ESOP  and who owned at least 250 shares of Wawa stock had the choice of receiving either

(1) shares in the new WAWA entity, or (2) $7,000 in cash for each share of Wawa stock.

WAWA shareholders holding shares outside the ESOP with fewer than 250 shares of Wawa

stock received $7,000 in cash for each share of Wawa stock. Since non-ESOP shareholders with

fewer than 250 shares did not have the right to receive stock in the new WAWA entity, WAWA

was able to reduce the number of shareholders to under 100, as required for an S-Corporation.

Since the ESOP Trustees hold legal title to the Wawa stock allocated to ESOP participants, the

ESOP counts as a single shareholder for purposes of the S-Corporation.

47.     As part of the merger transaction, WAWA shareholders, including ESOP

participants, were permitted to exercise dissenters' rights and receive $7,000 in cash for each

share of Wawa stock. At least one ESOP participant exercised dissenters' rights. In or about

December 2014, the ESOP transferred $624,211 to the Wawa, Inc. 401k Plan as a distribution to

those ESOP participants who exercised dissenters' rights.

48.     WAWA shareholders, including ESOP participants, were entitled to vote on the

proposed merger and S-Corporation conversion in November 2014. Defendants WOOD,

STOECKEL, and COMMITTEE determined that they had a conflict of interest for purposes of

the proposed merger and conversion, and therefore WAWA retained an independent fiduciary,

Argent Trust Company, to act on behalf of the ESOP.  As independent fiduciary, Argent Trust

Company voted on behalf of the unallocated WAWA shares held by the ESOP and the WAWA shares held by ESOP participants who failed to provide voting instructions.

49.     Following the S-Corporation conversion in December 2014, WAWA began making quarterly tax distributions to shareholders, including ESOP participants. Since the ESOP is a tax-qualified Plan, the ESOP shareholders did not have to make tax payments with these distributions. In addition, Defendants started obtaining quarterly valuations of the ESOP's Wawa stock beginning in 2015. Previously, Defendants had obtained an annual valuation of the ESOP's Wawa stock.

50.     By letter dated August 10, 2015, Defendants WOOD and STOECKEL informed Plaintiffs and other Terminated Employee Participants that they would no longer be able to hold Wawa stock in their ESOP accounts ("August 10 letter").

51.     The August 10 letter stated that Wawa's Board of Directors adopted an amendment to the ESOP on August 7, 2015 ("August 2015 Amendment").  According to the August 10 letter, the August 2015 Amendment required the sale of the Wawa stock held in the ESOP accounts of Terminated Employee Participants who ceased employment with Wawa before January 1, 2015 as early as August 30, 2015.

52.     Plaintiffs and other Class Members also received a separate letter dated August 10, 2015 from the ESOP as an enclosure with the letter from Defendants WOOD and STOECKEL. The August 10 letter from the ESOP provided distribution election instructions for Terminated Employee Participants whose Wawa stock would be divested as early as August 30, 2015 from their ESOP accounts. The August 10 letter from the ESOP directed Plaintiffs and other Class Members to review and online distribution package and complete an online distribution request form. In the alternative, the August 10 letter from the ESOP enclosed a paper

16

distribution election form.

53.     The August 10 letter from the ESOP stated that Plaintiffs and other Class Members had to make a distribution election between a lump sum distribution from the ESOP, or a rollover to an IRA or another qualified employer plan. If Terminated Employee Participants did not make a distribution election, then the ESOP would transfer the proceeds from the forced sale of their Wawa stock to a separate pension plan, the Wawa, Inc. 401(k) Plan.

54.     At the time that Defendants forced Plaintiffs and other Class Members to sell their Wawa stock, recent developments had made Wawa stock an excellent investment.  These developments included Wawa's conversion to an S-Corporation effective 2015, which eliminated the Company's federal income tax obligations, and Wawa's successful expansion into new regions, including Florida.

55.     The value of Wawa's stock has risen rapidly in recent years. As of December 31, 2010, Wawa stock was valued at $2,766.00 per share. As of December 31, 2011, Wawa stock was valued at $3,130.00 per share. As of December 31, 2012, Wawa stock was valued at $3,819.00 per share. As of December 31, 2013, Wawa stock was valued at $4,544.00 per share. As of December 31, 2014, Wawa stock was valued at $6,337.00 per share. As of March 29, 2015, Wawa stock was valued at $6,491.00 per share. As of June 30, 2015, Wawa stock was valued at $6,940.00 per share.  The valuations of Wawa stock from December 31, 2010 to June 30, 2015 are illustrated in the following chart:

2131504.1



56.     The August 10 letter stated that the August 2015 Amendment brought the Wawa ESOP in line with most other ESOPs and asserted that only 13% of ESOP companies allow former employees to stay in the ESOP for longer than one year. This statement was misleading because it omitted the fact that the overwhelming majority of leveraged ESOPs require former employees who terminate employment for reasons other than retirement, death or disability to continue to hold employer stock in the ESOP until the acquisition loan has been repaid. The Wawa ESOP is a leveraged ESOP with an outstanding acquisition loan of over $200 million as of December 31, 2014.

57.     The August 10 letter also stated that the August 2015 Amendment was necessary to make Wawa stock available for future ESOP contributions – "If we do not make these changes, there may not be enough shares of Wawa stock available to contribute to associate accounts each year…. If shares are not available [to contribute to the ESOP], current associates would receive a cash contribution, but would not have the ability to participate in the future growth of the Company's stock because there may not be enough stock in the Plan to be

18

allocated to them...." This statement was misleading because WAWA retired the stock purchased from Plaintiffs and the Class in the September 11, 2015 forced sale. Therefore, the forced sale did not make any additional Wawa stock available for active employee participants in the ESOP.

58.     Moreover, upon information and belief, the ESOP held more than 50,000 unallocated shares of Wawa stock at the time of the forced buyout. Thus, the ESOP held far more unallocated shares of Wawa stock than the approximately 26,497 shares that were owned by Terminated Employee Participants prior to the September 11, 2015 forced buyout. Upon information and belief, Defendants intended to use the ESOP's unallocated shares of Wawa stock for contributions to active employee participants in the ESOP.

59.     Upon information and belief, Defendants WOOD and STOECKEL made misleading statements in the August 10 letter to Plaintiffs and other Terminated Employee Participants in order to dissuade them from enforcing their rights under the ESOP and to disguise that the true purpose of the forced sale was to allow the Wood family to obtain a controlling interest in Wawa.

60.     By retiring the Wawa stock purchased from Plaintiffs and the Class, Defendants restored the Wood family, led by Defendant WOOD, to majority ownership of WAWA. Upon information and belief, Defendant WOOD and the Wood family sought to regain majority ownership of WAWA by means of the August 2015 forced buyout.

61.     While the Summary of Material Modifications enclosed with the August 10 letter advised that "Wawa stock in the ESOP participant's account **w[ould] be liquidated as early as [Sunday] August 30, 2015**," according to the 2014 Form 5500 filed by WAWA with the Department of Labor, the liquidation did not actually occur until September 11, 2015.

19

According to the WAWA ESOP 2014 Form 5500, "on September 11, 2015, $180,816.25 of ESOP stock in terminated participants accounts was liquidated." On that date, WAWA purchased approximately 26,497 shares of Wawa stock in the ESOP accounts of approximately 3,000 Class Members.

62.    According to the WAWA 2014 Form 5500, of the ESOP stock in Terminated Employee Participants' accounts that was liquidated and converted into $180,816.25, $91,069,675 of the proceeds were transferred to the 401(k) accounts for these Terminated Employee Participants. Upon information and belief, the remaining $92,800,000 in proceeds from the forced sale of Wawa stock belonging to Terminated Employee Participants in the ESOP was distributed either as lump sum distributions or rollovers to IRAs or other non-Wawa affiliated qualified plans. In short, the purpose of the September 11, 2015 forced sale sale was an attempt to eliminate Plaintiffs and the Class as participants in the ESOP.

63.    As part of the forced sale, Plaintiffs and other members of the Class were charged a $50.00 "distribution charge" by making a deduction directly from their individual ESOP accounts for the distribution of their accrued benefits, even though Plaintiffs and the Class had no choice but to have their benefits distributed.

64.    Pursuant to Section 5.3 of the 2014 ESOP Plan Document, the Trustee was required to engage "an independent appraiser to establish the fair market value of ESOP Stock as of each Valuation Date" by an appraiser with experience valuing securities that are not actively traded and the appraiser was required to provide the Trustee *and* the Committee with a written determination of the value of the ESOP stock within 30 days after the Valuation Date. Even though the Trustee was required to hire a third-party valuation firm to appraise the value of the ESOP's Wawa stock, the ultimate duty and responsibility to value the stock was and is the

20

responsibility of a fiduciary of the Plan.

65.     Pursuant to Article I of the 2014 ESOP Plan Document, "Valuation Date" is defined as "the last day of each fiscal year of the Company and each interim date on which the Committee determines that a valuation of the Fund shall be made." Beginning in 2015, the Committee has determined that the interim valuation date will be each quarter and as a result, the Committee has obtained an updated value of Wawa stock from a valuation firm at least at the end of each quarter.

66.     Pursuant to Section 6.8 of the 2014 ESOP Plan Document, "the value of the Fund and the amount of the Participant's interest shall be determined in accordance with the provisions of Article V as of the Valuation Date immediately preceding the date of any payment under this Article."

67.     The August 10 letter stated "Participants that [sic] are divested on August 30, 2015 will receive the appraised value of their shares. The appraised value of Wawa's shares, as determined by Columbia Financial Advisors, Inc., as of June 28, 2015, the end of Wawa's second fiscal quarter, was $6,940.00 per share. The appraised value will be updated as of August 30, 2015."

68.     Contrary to the representation in the August 10 letter, Defendants, used the June 28, 2015 ESOP valuation share price of $6,940 per share for the September 11, 2015 forced sale of the Wawa stock owned by Plaintiffs and the Class.

69.     By August 7, 2015, Defendants had already decided to use the June 28, 2015 valuation share price of $6,940 per share for the September 11, 2015 forced sale. WAWA's August 7, 2015 Owners' Update Special Bulletin stated that the upcoming August 30, 2015 forced sale would use the June 28, 2015 share price.

21

70.     The June 28, 2015 valuation share price of $6,940 was less than the $7,000 share price paid to certain Wawa shareholders, including at least one ESOP participant, in or about December 2014. Given the tax benefits of the S-Corporation conversion and WAWA's financial performance in the interim, no reasonable person would have concluded that the fair market value of Wawa stock had declined between December 2014 and September 11, 2015.

71.     Given the rapid appreciation in Wawa's share price in the 2015 quarterly valuations of Wawa stock, the June 28, 2015 valuation was less than fair market value as of September 11, 2015. In addition, since the June 28, 2015 valuation was more than 60-days old as of September 11, 2015, the June 28, 2015 valuation was stale as of the September 11, 2015 forced sale.

72.     Defendants knew or should have known that the June 28, 2015 share price was less than fair market value as of September 11, 2015.

73.     Plaintiffs and other members of the Class received a tax distribution of $85.00 per share in September 2015.

74.     The value of Wawa stock has continued to increase since Defendants divested Plaintiffs and other Class Members of their right to hold Wawa stock in their ESOP accounts, divested Plaintiffs and other Class Members of their Wawa stock, and forced them out of the ESOP. As of September 30, 2015, the appraised value of Wawa stock was $7,381.00 per share. As of December 30, 2015 appraised value of Wawa stock was $7,652.00 per share. The increased value of Wawa stock between December 31, 2010 and December 30, 2015 is illustrated in the following table:

2131504.1



75.    WAWA and/or the ESOP have purchased Wawa stock from non-ESOP shareholders in various tender offers in recent years, including tender offers in 2012, 2013, and 2014.

76.    Prior to November 2014, upon information and belief, the price paid to non-ESOP shareholders in these transactions was equal to or lower than the ESOP's most recent valuation of Wawa stock held by ESOP participants.

77.    However, the valuations WAWA obtained in conjunction with the S-Corporation conversion in late 2014 valued Wawa stock at a price higher than the most recent ESOP valuation. Duff & Phelps, one of the valuation advisors retained by WAWA in conjunction with the S-Corporation conversion, concluded that Wawa stock was then worth between $7,000 and $7,900 per share. By contrast, the most recent ESOP valuation as of that date, December 31, 2013, valued Wawa stock at only $4,544.00 per share.

78.    Significantly, the 2014 Duff & Phelps valuation did not include any consideration of the benefits to WAWA resulting from the proposed S-Corporation conversion, such as the

23

elimination of corporate tax liabilities. Because WAWA converted to an S-Corporation in December 2014, these benefits should have been considered in valuing Wawa stock for purposes of the forced buyout and should have resulted in a higher stock price than the ranges provided in the 2014 Houlihan Lokey and Duff & Phelps valuation analyses.

79.     The 2014 Houlihan Lokey and Duff & Phelps valuations should have raised a red flag to any loyal and prudent fiduciary that the recent ESOP valuations of Wawa stock were likely too low. However, upon information and belief, Defendants did not reconsider the recent appraisals of the ESOP's Wawa stock or request any changes to appraisals of the ESOP's Wawa stock prepared after Defendants received the 2014 Houlihan Lokey and Duff & Phelps valuations.

80.     The fact that the June 28, 2015 valuation of $6,940.00 per share was lower than the $7,000 per share price used for the 2014 merger, even though the June 28, 2015 valuation was supposed to take into account the financial benefit to WAWA of the S-Corporation conversion, should have raised a red flag to any loyal and prudent fiduciary that the June 28, 2015 valuation did not properly reflect the fair market value of Wawa stock as of June 28, 2015, let alone September 11, 2015.  As the June 28, 2015 valuation was used as the price for the September 11, 2015 forced sale, none of the Defendants reconsidered whether the June 28, 2015 valuation was appropriate to use for the forced sale.

81.     Defendants WOOD and STOECKEL operated under a conflict of interest in valuing the Wawa stock held by Plaintiffs and other Class members in the September 11, 2015 forced buyout because, upon information and belief, both had significant investments in Wawa stock both inside and outside of the WAWA ESOP and a lower purchase price for the Wawa stock held by Plaintiffs and the Class benefited the value of their own shares.  Additionally,

Defendant WOOD faced a further conflict of interest because as a result of the forced sale, his family block of shares would then have a controlling interest in WAWA. Notwithstanding these conflicts of interest, Defendants did not retain an independent fiduciary or obtain additional valuations even though such precautions had been taken in connection with the 2014 merger and S-Corporation conversion.

82. Plaintiffs and other Class Members received less than fair market value for their Wawa stock sold in the September 11, 2015 forced sale.

83. As a result of the August 2015 Amendment, Plaintiffs and the Class were divested of the right, at their option, to continue to hold Wawa ESOP stock in their WAWA ESOP account. As a result of the September 11, 2015 forced sale, Plaintiffs and the Class received less than fair market value for their Wawa stock. Additionally, as a result of the September 11, 2015 forced sale, Plaintiffs and other Class Members have lost out on investment gains from the continued rise in the value of Wawa stock, the dividends and tax distributions paid, and the opportunity for future investment gains, dividends and tax distributions from Wawa stock.

## CLASS ACTION ALLEGATIONS

84. Plaintiffs bring the claims for relief for violations of ERISA as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all persons who were Terminated Employee Participants in the ESOP as of January 1, 2015 with account balances greater than $5,000.00 and the beneficiaries of such participants ("Class"). Excluded from the Class are the Defendant Trustees and members of the Defendant COMMITTEE and their immediate families; the officers and directors of Defendant WAWA and their immediate families; and legal representatives, successors, heirs, and assigns of any such excluded persons.

85. The Class is so numerous that joinder of all members is impracticable. Based on

2131504.1

the most recent Form 5500 (the Form 5500 for Plan year 2014, which was filed in October 2015), there were over 3,000 Terminated Employee Participants of the ESOP at the time of the August 2015 Amendment. Although the exact number and identities of Class Members are unknown to Plaintiffs at this time, this information is easily ascertainable from the ESOP through discovery of its records. As WAWA operates in at least six states (Pennsylvania, New Jersey, Delaware, Maryland, Virginia and Florida), the members of this Class are geographically dispersed.

86.     Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

a)     Whether Defendants breached a fiduciary duty to the Class by representing that Terminated Employee Participants would have the same benefit entitlements as retiree participants;

b)     Whether Defendants breached a fiduciary duty to the Class by representing that WAWA would not divest Plan participants of any entitlement to a benefit under the ESOP;

c)     Whether Defendants breached a fiduciary duty to the Class by using a stale and unreliable valuation of Wawa stock for the August 30, 2015 forced sale;

d)     Whether the Class received less than fair market value for their Wawa shares in the September 11, 2015 forced sale;

e)     Whether Trustee Defendants and WAWA enagaged in a prohibited transaction in the September 11, 2015 forced sale;

f)     Whether Defendants violated ERISA's anti-cutback provision, ERISA §204(g), by eliminating the benefit entitlements of Terminated Employee Participants in the

August 2015 Amendment;

g)      The losses suffered by the ESOP and Terminated Employee Participants as a result of Defendants' ERISA violations; and

h)      The appropriate relief for Defendants' violations of ERISA.

87.      Plaintiffs' claims are typical of those of the Class because their claims arise from the same events, practices and/or course of conduct. Specifically, Plaintiffs challenge Defendants' ability to amend the terms of the WAWA ESOP after their termination from employment, apply the August 2015 Amendment to their ESOP accounts, and divest them of entitlement to a benefit under the ESOP; and Defendants' valuation of their Wawa stock in the Septemeber 11, 2015 forced sale. Plaintiffs' claims are also typical of the claims of the other members of the Class because the relief primarily sought consists of (a) a declaration establishing their rights under the Plan in effect at the time of their termination and consistent with the SPDs provided to them during their employment, (b) requiring the fiduciaries to make the Plan whole any losses caused by their fiduciary breaches and to disgorge their profits to the Plan, and (c) any such recovery from the Plan fiduciaries will be paid to the Plan and any equitable relief will flow to all Class Members.

88.      Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs, like other Terminated Employee Participants in the Class, have been divested of a benefit and the right to continue to hold Wawa stock in their ESOP accounts and also the continued appreciation in value of Wawa stock, tax distributions, and dividends on Wawa stock because of the forced sale of the Wawa stock in their individual ESOP accounts on September 11, 2015. As a result, Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the members of the Class.

2131504.1

89.     Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

90.     Class certification of Plaintiffs' Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

91.     Class certification of Plaintiffs' Claims for Relief for violations of ERISA is also appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations.

92.     Additionally, and alternatively, class certification of Plaintiffs' Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to all Class members predominate over any questions affecting individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this action. The August 2015 Amendment divested Plaintiffs and all Class members of their Wawa stock and thereby breached the promise that the Defendants would not divest Plaintiffs and the Class Members "*of any entitlement to a benefit.*" In addition, Plaintiffs and all Class members received less than fair market value for their Wawa stock on September 11, 2015. The losses suffered by individual Class members are small compared to the expense and burden of individual prosecution of this action. In addition, class

28

certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

93.     The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

a)      The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

b)      Upon information and belief, no other litigation concerning this controversy has been filed by any other members of the Class.

c)      This District is most desirable location for concentrating the litigation for reasons that include (but are not limited to) the following: (i) the headquarters of WAWA is located in this District, (ii) the WAWA ESOP is administered in this District, (iii) the Defendants can be found in this District, and (iv) the majority of the WAWA company witnesses are expected to be located in this District.

d)      There are no anticipated difficulties in managing this case as a class action.

94.     The names and addresses of the Class are available from the ESOP. Notice will be provided to all members of the Class to the extent required by Rule 23.

## COUNT I
**[Breach of Fiduciary Duty Under ERISA § 404(a)(1)(A), (B) & (D) 29 U.S.C. §§ 1104(a)(1)(A), (B) & (D), Against the Committee Defendants and the Trustee Defendants Regarding the Sale of Wawa Stock in the Forced Sale]**

95.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

96.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the

2131504.1

beneficiaries of the ESOP, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

97.     The duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the participant receives adequate consideration for the assets in his or her account in the Plan. Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market, means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations.

98.     Section 5.3 of the terms of the Plan require that all valuations must be supported by independent appraiser selected by the Committee who provides the Trustee and the Committee with a written determination of the value of the ESOP stock within 30 days after the Valuation Date, and that all valuations of ESOP stock must be made in accordance with IRC § 401(a)(28)(C), Section 3(18) of ERISA, and any regulations thereunder.

99.     Pursuant to IRC § 401(a)(28)(C), an independent appraiser must meet the requirements of the regulations under Section 170(a)(1), which governs the appraisal of stock for charitable contributions.

100.    The regulations under IRC § 170 (which apply to IRC § 401 and are incorporated by the terms of the Plan), specifically 26 CFR 1.170A-13, require that any qualified appraisal must be performed not earlier than 60 days before the date of the contribution, which as applied

30

here, means not earlier than 60 days before the date of the sale.

101.    As August 30, 2015 and September 11, 2015 were both more than 60 days after June 28, 2015, the valuation of Wawa ESOP stock preformed as of June 28, 2015 was not a qualified appraisal.  Upon information and belief, the Trustees and Committee of the ESOP did not obtain any additional valuation.

102.    Even if the June 28, 2015 valuation was not stale under the IRC regulations and therefore under the terms of the Plan, or if the fiduciaries obtained an updated valuation (contrary to their own representations), the valuation that they obtained and relied upon did not constitute adequate consideration or fair market value.

103.    As set forth above, the Trustee Defendants and the Committee Defendants should have been aware of other valuations performed in conjunction with the 2014 S-Corporation merger that should have alerted them that the valuation used in connection with the forced sale did not reflect the fair market value of Wawa stock on August 30 or September 11, 2015.

104.    In the event that Trustee Defendants or the Committee Defendants did not know or were not aware of facts regarding the other valuations, they were required to undertake an appropriate investigation to make that determination in order to fulfill their fiduciary duties and an appropriate investigation would have revealed the other valuations and the fact that the valuation used for the forced sale did not reflect the fair market value of the Wawa stock.

105.    As a result of causing or permitting the forced sale of the Terminated Employees' Wawa stock at the June 28, 2015 price, the Committee Defendants and the Trustee Defendants breached their fiduciary duties under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D), and caused losses to the Class Members' accounts and to the Plan.

2131504.1

## COUNT II
### [Engaging in Prohibited Transactions Forbidden by ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b) Against Trustee Defendants and Wawa]

106.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

107.    The Trustee Defendants held legal title to the Wawa stock allocated to the individual ESOP accounts of Plaintiffs and other members of the Plaintiff Class. Therefore, Trustee Defendants sold the Wawa stock allocated to the individual ESOP accounts of Plaintiffs and other members of the Plaintiff Class in the September 11, 2015 forced sale.

108.    ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

109.    ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "deal with the assets of the plan in his own interest or for his own account," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

110.    ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules in ERISA § 406(a) for sale of employer securities to or from a plan if a sale is made for adequate consideration. ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that

32

the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

111.    The Trustee Defendants and Defendant WAWA engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), in the September 11, 2015 forced sale, and the prohibited transaction did not meet the conditional exemption requirements of ERISA § 408(e), 29 U.S.C. § 1108(e). Trustee Defendants failed to ensure that WAWA paid no less than fair market value for the Wawa stock purchased by WAWA from Plaintiffs and other Plaintiff Class Members on or about September 11, 2015. Specifically, WAWA paid less than fair market value for shares purchased in the September 11, 2015 forced sale. Trustee Defendants also failed to conduct an independent and prudent investigation into the fair market price of Wawa stock before entering into the September 11, 2015 forced sale transaction with WAWA.

112.    Defendant WOOD also engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), in the September 11, 2015 forced sale because he dealt with the Plan's assets in his own interests or for his own account.  As a result of the September 11, 2015, the Wood family was restored to majority ownership of WAWA.

113.    As a result of causing or participating in a prohibited transaction, the Trustee Defendants and WAWA caused losses to the Class Members' accounts and to the Plan, and have profited from the prohibited transaction.

## COUNT III
### [Breach of Fiduciary Duty Under ERISA § 404(a)(1)(D), 29 U.S.C. §§ 1104(a)(1)(D) Against the Trustee Defendants and the Committee Defendants Regarding the Transfer]

114.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

115.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary

33

discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the ESOP, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

116.    Among other duties, the Trustee and the Committee had an obligation to follow the terms of the Wawa ESOP Plan Document, including § 11.2 to the extent that those terms were consistent with ERISA.

117.    Section 11.2 of the 2014 Wawa ESOP Plan Document provides in relevant part that the assets of the Plan shall not "be transferred to any other qualified retirement plan unless each Participant would receive a benefit after such … transfer (assuming the Plan then terminated) which is of actuarial value equal to or greater than the benefit he would have received from his Accounts if the Plan had been terminated on the day before such … transfer."

118.    To the extent that the transfer of accounts occurred on the same day as the liquidation of the accounts, the assets transferred did not have an actuarial value equal to or greater than the benefit that those participants would have had on the day before the transfer because the day before the transfer, they were invested in Wawa stock and immediately after the transfer, they were invested in cash that was not a value equivalent to the value of Wawa stock on the day before the transfer.

119.    No prudent and loyal fiduciary would have transferred the assets from the Wawa ESOP when he knew or should have known that the value of those accounts would be

substantially less immediately after the transfer due to the incorrect valuations used as part of the liquidation.

120.     As set forth above, the Trustee Defendants and the Committee Defendants should have been aware of facts about other valuation that should have alerted them that the valuation used in connection with the August 30/September 11, 2015 forced sale was not correct.  In the event that Trustee Defendants and the Committee Defendants did not know or were not aware of facts that Wawa employee accounts were not equal in value after the transfer, they were required to undertake an appropriate investigation to make that determination in order to fulfill their fiduciary duties and to comply with Section 11.2 of the Wawa ESOP Plan Document.

121.     As a result, by transferring the assets, the Trustee Defendants and the Committee Defendants breached their fiduciary duties under ERISA § 404(a)(1)(A), (B), and (D), 29 U.S.C. § 1104(a)(1)(A),(B) and (D).

## COUNT IV
**[Breach of Fiduciary Duty Under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B), Against the Committee Defendants and Trustee Defendants For Misrepresentations]**

122.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

123.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the ESOP, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

124.     A plan fiduciary's duties of loyalty and prudence includes a duty to disclose and inform. These duties not only require that a fiduciary comply with the disclosure provisions in

35

Title I of ERISA, but also entails: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

125.    Defendants breached these duties  as follows with regard to statements or omissions as follows:

a)    The COMMITTEE and WAWA misled Terminated Employee Participants by promising in SPDs, the Offering Memorandum, and other communications that Terminated Employee Participants would have their benefits paid in the same form and manner as retirement benefits as described in the Section of the SPD titled "Retirement Benefits."

b)    The COMMITTEE and WAWA misled Terminated Employee Participants by promising in SPDs that WAWA would not divest Plan participants of any entitlement to benefits, including but not limited to their right to continue to hold Wawa stock;

c)    WAWA and STOECKEL misled Terminated Employee Participants by assuring them that they had the rights of owners, would remain in the ESOP until retirement, and would be able to use ESOP benefits to supplement their retirement income; and

d)    Defendants WOOD and STOECKEL misrepresented the background of the August 2015 Amendment to Plan participants, including the statements that the Amendment would bring the ESOP in line with the benefit distribution provisions of the majority of other ESOPs and was necessary to make additional stock

36

available for current participants in the ESOP, and by failing to disclose that one of the motives of the August 2015 Amendment was to restore the Wood family to majority ownership of WAWA.

126.     As former employees of Wawa with account balances worth more than $5,000, the members of the Class had the option under Article VI of the Plan to choose either to remain invested in Wawa stock in the WAWA ESOP or to elect to receive a distribution from the Plan. By virtue of the fact that Plaintiffs and members of the Class did not elect to receive a distribution, they chose to remain invested in Wawa stock in the WAWA ESOP.

127.     By choosing to remain invested in Wawa stock and then having their stock sold at an arbitrary date not of their choosing and receiving less than 40 days' notice of the forced sale (and 18 days or less to submit any election), Plaintiffs and members of the Class were harmed by Defendants failing to honor their promises and representations that former employees would be able to remain invested in Wawa stock through the WAWA ESOP until retirement age.

128.     As a result, Plaintiffs and the Class were also harmed as a result of missing other opportunities or alternatives for retirement planning.

<u>**COUNT V**</u>
**[Violation of the Anti-Cutback Provision of ERISA § 204(g), 29 U.S.C § 1054(g)**
**Against Defendant WAWA]**

129.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

130.     ERISA § 204(g), 29 U.S.C. § 1054(g) provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan."

131.     Under 26 C.F.R. § 1.411(d)-3(a)(1), "a plan amendment includes any changes to the terms of the plan."

132.     ERISA § 3(23), 29 U.S.C. § 1002(23), defines "accrued benefit" as follows:

37

(a) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in § 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age, or

(b) in the case of a plan which is an individual account plan, the balance of the individual's account.

133.    An accrued benefit includes not only the "net effect" of the dollars earned and/or paid under the Plan, but also the features and elements of the benefit formula itself. As such, the accrued benefits protected from elimination by amendment under ERISA § 204(g) includes the conditions on which the benefits are to be paid under the Plan.

134.    Accrued benefits are considered "decreased" for purposes of ERISA § 204(g) not only when they are reduced in size or eliminated entirely, but also when the plan imposes new conditions or materially greater restrictions on their receipt.

135.    Under the terms of the ESOP Plan document prior to the August 2015 Amendment, a Terminated Employee Participant was entitled to continue to hold Wawa stock in his or her individual ESOP account until age 68.

136.    A Terminated Employee Participant was further entitled to the same benefit distribution options as a retiree participant under the ESOP Plan document prior to the August 2015 Amendment.

137.    The benefit rights of Terminated Employee Participants alleged herein are accrued benefits.

138.    By divesting Plaintiffs and the Class and thereby eliminating the right of Plaintiffs and the Class to continue holding Wawa stock in their individual ESOP accounts, and by the forced sale of Wawa stock on September 11, 2015, the August 2015 Amendment

decreased, and, in fact, eliminated accrued benefits of Plaintiffs and the Class.

139.    As a result, the August 2015 Amendment constituted a prohibited cut back of benefits in violation of ERISA § 204(g), 29 U.S.C. § 1054(g) as to Plaintiffs and the Class.

140.    As such, Plaintiffs and the Class are entitled to benefits for which they are eligible in conformity with the provisions of the ESOP Plan document as if the August 2015 Amendment had not been implemented, as well as the payment of any benefits, lost investment earnings, dividends, tax distributions, interest, and distribution charges which may be owing.

### COUNT VI
**[Invalidation of the 2015 Amendment & Enforcement of the Terms of the Plan Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Against All Defendants]**

141.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

142.    ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

143.    Relief is unavailable under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) or the remedy under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) is not adequate because the terms of the Plan now include the terms of the August 2015 Amendment. Therefore, a claim challenging the validity of the August 2015 Amendment is properly brought under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

144.    As a matter of both federal common law and the common law of contract, which apply to ERISA plans, the terms of the Plan are fixed at the time of acceptance by the employee-participant, which is completed by performance. At the latest, once an employee separates from

39

employment, the terms of a pension plan in existence at the time of separation of employment are the terms that govern the benefits owed to and to be paid to the participant.

145.     As a matter of contract law, the August 2015 Amendment is invalid to the extent that it applies to participants of the Wawa ESOP who terminated, retired, or otherwise completed performance before the effective date.

146.     As a result, Plaintiffs and the Class are entitled to have the August 2015 Amendment declared invalid as to them, to a declaration that their rights and benefits are and will be determined under the Plan in effect when they terminated or retired, and, as necessary, Plaintiffs and the Class are entitled to have the Plan reformed accordingly and/or to an injunction requiring administration of the Plan in a manner consistent with the terms of the Plan in existence at the time of their retirement.

**COUNT VII**
**[Violation of ERISA § 102, 29 U.S.C. § 1022, Against the COMMITTEE Defendants]**

147.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

148.     ERISA § 102(a), 29 U.S.C. § 1022(a), requires the plan administrator to furnish plan participants with an SPD that includes a description of the provisions providing for nonforfeitable pension benefits, and circumstances which may result in disqualification, ineligibility, or loss of benefits.

149.     ERISA § 102(a), 29 U.S.C. § 1022(a), further requires that the SPD shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

150.     To the extent that the terms of the Plan did not actually provide Terminated Employee Participants with the right to have their benefits paid in the same form and manner as

40

retirement benefits as described in the SPD, the COMMITTEE violated its duties under ERISA § 102(a), 29 U.S.C. § 1022(a), by furnishing Plaintiffs and other Class Members with SPDs that promised that Terminated Employee Participants would have their benefits paid in the same form and manner as retirement benefits as described in the Section of the SPD titled "Retirement Benefits."

151. To the extent that the terms of the Plan did not actually provide Terminated Employee Participants with the right not to be divested of any entitlement to benefits, including their right to continue to hold Wawa stock, the COMMITTEE violated its duties under ERISA § 102(a), 29 U.S.C. § 1022(a), by furnishing Plaintiffs and other Class Members with SPDs that promised that WAWA would not divest Plan participants of any entitlement to benefits, including their right to continue to hold Wawa stock.

152. As former employees of Wawa with account balances worth more than $5,000, the members of the Class had the option under Article VI of the Plan to choose either remain invested in Wawa stock in the WAWA ESOP or to elect to receive a distribution from the Plan. By virtue of the fact that Plaintiffs and members of the Class did not elect to receive a distribution, they chose to remain invested in Wawa stock in the WAWA ESOP.

153. Plaintiffs and the Class were harmed as a result of the COMMITTEE's violations with respect to the SPD because they were divested of their right and ability to hold Wawa stock in their WAWA ESOP accounts as a result of the September 11, 2015 forced sale in which WAWA purchased the Wawa stock in the individual ESOP accounts of Plaintiffs and the Class, and forced them to take a distribution of their ESOP accounts.

**COUNT VIII**
**[Violation of ERISA § 404(a)(A)&B), 29 U.S.C. 1104(A)&(B), Against Defendant WAWA]**

154.    Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

155.    Pursuant to Sections 9.1. and 10.1 of the 2014 ESOP Plan document, WAWA acting by appropriate resolution of its Board of Directors had the power and responsibility for appointing and removing respectively the Trustee and Administrator of the ESOP, and appoint a new Trustee or Trustees and/or Administrator in their place as well as entering into any Trust Agreement.

156.    Pursuant to this authority, Defendants WAWA had a duty to monitor the Trustee Defendants' conduct and the Committee Defendants' conduct, and to take appropriate action if those Defendants were not adequately protecting the interests of the ESOP participants.

157.    Upon information and belief, Defendant WAWA knew or, in the exercise of reasonable diligence, should have known that the Trustee Defendants and/or the Committee Defendants had failed to conduct a reasonable investigation of the price of Wawa stock, had failed to determine whether the forced sale was consistent with the terms of the Plan document and representations made to the Class,  had failed to honor promises and representations in disclosures made to participants in the ESOP about their ability to remain invested in Wawa stock through the ESOP, and had made misleading statements about the reasons for the 2015 Amendment.

158.    By failing to properly monitor and/or take appropriate action against, including the removal of, the Trustee Defendants and/or the Committee Defendants, Defendant WAWA breached its fiduciary duties under ERISA by failing to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries and (B) with the care, skill, prudence, and

42

diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, all in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

159.    As a result of the breaches by Defendant WAWA, the Plan suffered a loss and/or the participants who are members of the Class correspondingly also suffered losses to their individual accounts.

## COUNT IX
### [Violation of ERISA § 410 & ERISA § 404(a)(1)(A), (B) Against All Defendants]

160.    Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

161.    ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA Part IV] shall be void as against public policy."  As ERISA § 403(a) and ERISA § 404(a) are both under Part IV of ERISA, any provision that attempts to relieve a fiduciary of liability is void pursuant to ERISA 410(a) unless there is an exception or exemption.  No such exemption or exception is applicable here.

162.    Section 10.6 of the Wawa 2014 ESOP Plan Document purports to indemnify "each member of the Committee and any other person who is an Employee or director of the Company" for any "expenses (other than amounts paid in settlement to which the Company does not consent) reasonably incurred by him in connection with any action to which he may be a party by reason of his performance of administrative functions and duties under the Plan, except

2131504.1

in relation to matters to which he shall be adjudged in such action to be personally *guilty of willful misconduct in the performance of his duties*."

163.    To the extent that Section 10.6 of the Wawa 2014 ESOP Plan Document (or any other agreement) attempts to relieve the Trustee Defendants or the Committee Defendants of their responsibility or liability to discharge their fiduciary duties or to have Wawa (an ESOP-owned company) and thereby the Wawa ESOP be responsible for their liability or breaches, Section 10.6 is void as against public policy.

164.    To the extent that any of the fiduciaries of the Plan would agree to such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries and (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

165.    As a result of the foregoing, Section 10.6 should be declared void *ab initio* and the terms of the Wawa ESOP Plan document should be reformed to strike or modified accordingly.

## ENTITLEMENT TO RELIEF

166.    By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiffs and the Class, as plan participants and beneficiaries, are entitled to sue the fiduciaries pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including recovery for the Plan of any losses to the

2131504.1

Plan resulting from each such breach and for such other equitable or remedial relief as the Court may deem appropriate.

167.    By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiffs and the Class, as plan participants and beneficiaries, are entitled to sue the fiduciaries pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enjoin the ongoing breach of fiduciary duty, the ongoing violations of ERISA, and the ongoing practices identified above that violate the terms of the Plan, and to obtain other appropriate equitable relief to redress such violations and/or to enforce the provisions of ERISA and the terms of the Plan.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment against the Defendants and each of them on each Claim for Relief and for the following relief:

A.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives and their counsel as class counsel;

B.    Declare that Plaintiffs and the Class are entitled to have their benefits calculated and/or paid in conformity with the terms of the Plan document in effect at the time of their termination;

C.    Declare that Defendants and each of them have breached their fiduciary duties to the Class and/or knowingly participated in breaches of fiduciary duty;

D.    Enjoin Defendants and each of them from further violations of their fiduciary responsibilities, obligations and duties;

E.    Order that Defendants make good to the ESOP and/or to any successor trust(s) the losses resulting from their breaches and restoring any profits they have made through use of assets of the ESOP;

2131504.1

F.      Order that Defendants provide other appropriate equitable relief to the ESOP,

Plaintiffs, and the Class, including but not limited to, surcharge, rescission, reformation of the

Plan, providing an accounting for profits, imposing a constructive trust and/or equitable lien on

any funds wrongfully held by Defendants;

G.      Invalidate the August 2015 Amendment or reforming the terms of the ESOP Plan

document to eliminate the applicability of the August 2015 Amendment as to any participant

who terminated prior to its adoption;

H.      Requiring Defendants to make good any losses suffered by Plaintiffs and the

Class from the forced sale of the Wawa stock held in their individual accounts in the ESOP in

September 2015 and disgorge to Plaintiffs and the Class any profits they have made form the

forced sale ;

I.      Remove the Trustees and the members of the COMMITTEE from their role as

fiduciaries of the ESOP, enjoining any of the breaching fiduciaries from acting as fiduciaries for

any plan that covers the employees of WAWA and appointing an Independent Fiduciary to

manage the WAWA ESOP;

J.      Order the proceeds of any recovery for the Plan to be allocated to the accounts of

the Class to make them whole for any injury that they suffered as a result of the breaches of

fiduciary duty in accordance with the Court's declaration with respect to the terms of the Plan;

K.      Ordering pursuant to ERISA § 206(d)(4) that any amount to be paid to or

necessary to restore Plaintiffs' ESOP account can be satisfied by using or transferring any

breaching fiduciary's ESOP account in the Plan to the extent of his liability;

L.      Declare that any indemnification agreement between the Defendants and the

ESOP violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void;

M.      Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

N.      Order Defendants to pay prejudgment interest; and

O.      Award such other and further relief as the Court deems equitable and just.

Dated:  April 22, 2016                    Respectfully submitted,


                                          Raymond M. Sarola (PA Bar No. 318164)
                                          Gary L. Azorsky (PA Bar No. 38924)
                                          **COHEN MILSTEIN SELLERS**
                                          **& TOLL PLLC**
                                          3 Logan Square, 1717 Arch Street
                                          Suite 3610
                                          Philadelphia, PA 19103
                                          Tel:  (267) 479 5700
                                          Fax: (267) 479-5701
                                          Email:  gazorsky@cohenmilstein.com
                                          Email:  rsarola@cohenmilstein.com


                                          R. Joseph Barton (*pro hac vice*)
                                          **COHEN MILSTEIN SELLERS**
                                          **& TOLL PLLC**
                                          1100 New York Avenue, N.W.
                                          West Tower, Suite 500
                                          Washington, DC 20005-3964
                                          Tel:  (202) 408-4600
                                          Fax: (202) 408-4699
                                          Email:  jbarton@cohenmilstein.com
                                           Daniel Feinberg (*pro hac vice*)
                                          **FEINBERG, JACKSON, WORTHMAN**
                                          **& WASOW LLP**
                                          383 4th Street, Suite 201
                                          Oakland, CA 94607
                                          Tel:  (510) 269-7998
                                          Fax: (510) 269-7994
                                          Email: dan@feinbergjackson.com


                                          Richard E. Donahoo, (*pro hac vice*)
                                          **DONAHOO & ASSOCIATES, P.C.**
                                          440 W. First Street, Suite 101
                                          Tustin, California 92780
                                          Tel:  (714) 953-1010
                                          Fax: (714) 953-1777
                                          Email:  rdonahoo@donahoo.com


                                          *Attorneys for Plaintiffs*


                                          48

## CERTIFICATE OF SERVICE

I, Ray Sarola, hereby certify and declare that a true and correct copy of the foregoing Amended Complaint Class Action was filed with the Clerk of the court and a courtesy copy sent to Honorable Judge Diamond on April 22, 2016 at the following address:

Clerk of Court's Office
U.S. District Court, Eastern District of Pennsylvania
2609 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1797


   /s/Ray Sarola
   Ray Sarola

## CERTIFICATE OF SERVICE

I, Kate Tenenbaum, hereby certify and declare that a true and correct copy of the foregoing Amended Complaint Class Action was served upon the below listed counsel for Defendants via electronic mail and in sealed envelopes individually addressed and deposited into an official depository under the exclusive care and custody of the United States Postal Service on April 22, 2016 as follows:

Jeremy P. Blumenfeld
MORGAN, LEWIS & BLOCK LLP
1701 Market Street
Philadelphia, PA 19103
215 963-5150
jeremy.blumenfeld@morganlewis.com

Brian T. Ortelere
MORGAN, LEWIS & BLOCK LLP
1701 Market Street
Philadelphia, PA 19103
215 963-5258
brian.ortelere@morganlewis.com

Andrew A. Napier
MORGAN, LEWIS & BLOCK LLP
1701 Market Street
Philadelphia, PA 19103
215 963-5610
andrew.napier@morganlewis.com

David I. Monteiro
MORGAN, LEWIS & BLOCK LLP
1717 Main Street, Ste. 3200
Dallas, Texas 75201
214 466-4000
david.monteiro@morganlewis.com

*Attorneys for Defendants*

_/s/Kate Tenenbaum_____
Kate Tenenbaum

2131504.1