**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREG PFEIFER and ANDREW DORLEY, <br><br> Plaintiffs, <br><br> -vs.- <br><br> WAWA, INC., RETIREMENT PLANS COMMITTEE OF WAWA, INC., JARED G. CULOTTA, MICHAEL J. ECKHARDT, JAMES MOREY, CATHERINE PULOS, HOWARD B. STOECKEL, DOROTHY SWARTZ, RICHARD D. WOOD, JR. and KEVIN WIGGINS. <br><br> Defendants, <br><br> and <br><br> WAWA, INC. EMPLOYEE STOCK OWNERSHIP PLAN. <br><br> Nominal Defendant. | Case No. 16-00497-PD |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 3

III.  ARGUMENT ....................................................................................................... 8

      A.    The Class is Ascertainable ...................................................................... 8

      B.    The Proposed Class Meets Each of the Preconditions of Rule 23(a) ................... 10

            1.    The Class is So Numerous That Joinder of All Members is
                  Impracticable ............................................................................... 10

            2.    Common Questions of Law or Fact Exist ................................... 11

            3.    Plaintiffs' Claims Are Typical of the Class and Defendants Have
                  Identified No Unique Defenses .................................................. 16

            4.    The Proposed Class Representatives and their Counsel Will Fairly
                  and Adequately Protect the Interests of the Class ..................... 22

      C.    The Claims Meet the Requirements of Rule 23(b) ................................ 29

            1.    The Requirements of Rule 23(b)(1) Are Met ........................... 29

            2.    The Requirements of Rule 23(b)(2) Are Also Met ................... 34

            3.    The Requirements of Rule 23(b)(3) Are Also Met ................... 38

IV.   CONCLUSION ................................................................................................. 43

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alday v. Raytheon Co.*,
   619 F. Supp. 2d 726 (D. Ariz. 2008) ...................................................................35

*Amara v. CIGNA Corp.*,
   775 F.3d 510 (2d Cir. 2014)....................................................................40, 42

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................13, 27, 35, 44

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
   133 S. Ct. 1184 (2013)..........................................................................13

*In re Arakis Energy Corp. Sec. Litig.*,
   No. 95-cv-3431 (ARR), 1999 WL 1021819 (E.D.N.Y. Apr. 27, 1999) .................31

*Baby Neal for and by Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994)...................................................................22

*Barnes v. Am. Tobacco Co.*,
   161 F.3d 127 (3d Cir. 1998)...............................................................41

*Beck v. Maximus*,
   457 F.3d 291 (3d Cir. 2006)..........................................................22, 27

*Berger v. Xerox Corp. Ret. Income Guar. Plan*,
   338 F.3d 755 (7th Cir. 2003) ........................................................41, 42

*Brooks v. Educators Mut. Life Ins. Co.*,
   206 F.R.D. 96 (E.D. Pa. 2002)...........................................................44

*Bunnion v. Consolidated Rail Corp.*,
   No. Civ. A. 97-4877, 1998 WL 372644 (E.D. Pa. May 14, 1998) ...................20, 37

*Byrd's v. Aaron's Inc.*,
   784 F.3d 154 (3d Cir. 2015)...............................................................14

*Chakejian v. Equifax Information Servs. LLC*,
   256 F.R.D. 492 (E.D. Pa. 2009)..........................................................47

*Chesemore v. Alliance Holdings, Inc.*,
   No. 3:09-cv-00413 (W.D. Wis.) ...........................................................33

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011)................................................................................... *passim*

*In re Community Bank of Northern Virginia Mortgage Lending Practices
   Litigation*,
   795 F.3d 380 (3d Cir. 2015)..................................................................... 29

*In re Corrugated Container Antitrust Litigation*,
   643 F.2d 195 (5th Cir. 1981) .................................................................... 29

*Cottillion v. United Ref. Co.*,
   No. CIV.A. 09-140E, 2013 WL 5936368 (W.D. Pa. Nov. 5, 2013)............................... *passim*

*Dewey v. Volkswagen Akteingesellschaft*,
   681 F.3d 170 (3d Cir. 2012)...................................................................... 28

*Eisenberg v. Gagnon*,
   766 F.2d 770 (3d Cir. 1985)...................................................................... 19

*Feret v. Corestates Financial Corp.*,
   1998 WL 512933 (E.D. Pa. Aug. 18, 1998) ................................................... 35

*Fischer v. Philadelphia Elec. Co.*,
   994 F.2d 130 (3d Cir. 1993)...................................................................... 39

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
   463 U.S. 1 (1983)................................................................................... 41

*Garcia v. Intelligroup, Inc.*,
   No. CIV A 04-4980 JCL, 2005 WL 6074922 (D.N.J. Aug. 10, 2005)..................... 32

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)............................................................................... 31

*Gilman v. Independence Blue Cross*,
   1997 WL 633568 (E.D. Pa. Oct. 6, 1997).................................................... 44

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) .................................................................. 44

*Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000)............................................................................... 43

*Hassine v. Jeffes*,
   846 F.2d 169 (3d Cir. 1988)...................................................................... 31

*In re Ikon Office Solutions, Inc.*,
   191 F.R.D. 457 (E.D. Pa. 2000).......................................................... 18, 37, 38

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
    702 F.3d 364 (7th Cir. 2012) ........................................................42

*Johnston v. HBO Film Mgmt., Inc.*,
    265 F.3d 178 (3d Cir. 2001)..........................................................44

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008)...................................................35

*Kane v. United Indep. Union Welfare Fund*,
    1998 WL 78985 (E.D. Pa. Feb. 23, 1998) ....................................38

*Kindle v. Dejana*,
    315 F.R.D. 7 (E.D.N.Y. 2016).......................................................18

*Krimes v. JP Morgan Chase Bank, NA*,
    No. 15-cv-5087, 2016 WL 6276440 (E.D. Pa. Oct. 26, 2016) ..............28

*LaFata v. Raytheon Co.*,
    207 F.R.D. 35 (E.D. Pa. 2002)..............................................44, 47

*Marsden v. Select Medical Corp.*,
    246 F.R.D. 480 (E.D. Pa. 2007)...................................................15

*Mehling v. N.Y. Life Ins. Co.*,
    246 F.R.D. 467 (E.D. Pa. 2007)......................................22, 33, 43

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ........................................................48

*In re National Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016)........................................................16, 22

*Neil v. Zell*,
    275 F.R.D. 256 (N.D. Ill. 2011).................................................32, 38

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001)........................................................18, 44

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)......................................................................37

*In re OSB Antitrust Litig.*,
    No. 06-826, 2007 WL 2253418 (E.D. Pa. Aug. 3, 2007) .............33

*Osberg v. Footlocker*,
    Case No. 1:07-cv-1358, 2014 WL 5796686 (S.D.N.Y. Sept. 24, 2014) ................46

*Pender v. Bank of America Corp.*,
269 F.R.D. 589 (W.D.N.C. 2010) ...................................................................23, 36

*Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*,
499 F.3d 1151 (10th Cir. 2007) ...............................................................................25

*In re Philips/Magnavox Television Litig.*,
No. CIV.A. 09-3072 CCC, 2012 WL 1677244 (D.N.J. May 14, 2012) .................................33

*In re Polaroid ERISA Litigation*,
240 F.R.D. 65 (S.D.N.Y. 2006) .................................................................................26

*Porter v. Warner Holding Co.*,
328 U.S. 395 (1946) .................................................................................................43

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir.1998).................................................................................22, 28

*In re Rent-Way Securities Litigation*,
218 F.R.D. 101 (W.D. Pa. 2003) .............................................................................18

*Reyes v. Netdeposit, LLC*,
802 F.3d 469 (3d Cir. 2015).....................................................................................16

*Rogers v. Baxter Intern., Inc.*,
No. 04-6476, 2006 WL 794734 (N.D. Ill. Mar. 22, 2006) ....................................26

*S.E.C. v. AMX, Int'l*,
7 F.3d 71 (5th Cir. 1993) .........................................................................................43

*Savani v. Washington Safety Mgmt. Sols., LLC*,
No. 1:06-cv-02806, 2012 WL 3757239 (D.S.C. Aug. 28, 2012).....................16, 36

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009)............................................................................ *passim*

*Sessions v. Owens-Illinois, Inc.*,
267 F.R.D. 171 (M.D. Pa. 2010)..............................................................................38

*Severstal Wheeling Inc. Retirement Committee v. WPN Corporation*,
No. 10 Civ. 954 (LTS) (GWG) (S.D.N.Y.) ............................................................33

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)..................................................................................................13

*Sheinberg v. Sorenson*,
606 F.3d 130 (3d Cir. 2010)......................................................................................32

*Shelton v. Bledsoe*,
 775 F.3d 554 (3d Cir. 2015)................................................................14

*Stanford v. Foamex L.P.*,
 263 F.R.D. 156 (E.D. Pa. 2009).................................................. *passim*

*Stewart v. Abraham*,
 275 F.3d 220 (3d Cir. 2001)................................................................15

*Stoetzner v. U.S. Steel Corp.*,
 897 F.2d 115 (3d Cir. 1990)................................................................43

*In re Telectronics Pacing Sys, Inc.*,
 172 F.R.D. 271 (S.D. Ohio 1997).........................................................31

*Thomas v. SmithKline Beecham Corp.*,
 201 F.R.D. 386 (E.D. Pa. 2001)......................................21, 35, 37, 38

*Thompson v. Linvatec Corp.*,
 No. 6:06-CV-0404(NPM/GJD), 2007 WL 1526418 (N.D.N.Y. May 22, 2007)....................13

*Upjohn Co. v. United States*,
 449 U.S. 383 (1981)............................................................................30

*Valley Drug Co. v. Geneva Pharms., Inc.*,
 350 F.3d 1181 (11th Cir. 2003) ...........................................................28

*Vaquero v. Ashley Furniture Indus., Inc.*,
 824 F.3d 1150 (9th Cir. 2016) .............................................................46

*In re Visa Check/MasterMoney Antitrust Litig.*,
 280 F.3d 124 (2d Cir. 2001) (Sotomayor, J.).......................................48

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011)....................................................13, 16, 41, 42

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004)..........................................................47, 48

**STATUTES**

29 U.S.C. §§ 1132(a)(2), 1132(a)(3), 1106, 1109, 1110...............................................7

ERISA ............................................................................................... *passim*

ERISA § 102 .......................................................................................12, 40

ERISA § 204(g) ..................................................................................11, 24

ERISA § 206(d)(4)..........................................................................................................12

ERISA § 404.............................................................................................................7, 40

ERISA § 410...................................................................................................7, 13, 23, 45

ERISA § 502(a)(1)(B).................................................................................................38, 41

ERISA § 502(a)(2)....................................................................................................7, 34, 36

ERISA § 502(a)(3)......................................................................................................7, 41

ERISA § 502(a)(3)(B)......................................................................................................41

ERISA § 502(g)..............................................................................................................13

**OTHER AUTHORITIES**

American Bar Association ...............................................................................................30

*Black's Law Dictionary* (7th ed. 1999)............................................................................42

Dan B. Dobbs, *The Law of Remedies* § 4.3(6) (2d ed. 1993) .........................................42

Federal Rule of Civil Procedure 23 ...................................................................... *passim*

George G. Bogert, et al., *The Law Of Trusts And Trustees* § 471 (2008)......................43

## INDEX OF EXHIBITS

**Bowers Declaration:**

Exhibit 1: Excerpts from the final transcript from the 30(b)(6) deposition of Wawa, Inc. for witness Daniel Peterson, the senior supervisor of retirement plans

Exhibit 2: 2004 Summary Plan Description ("SPD") for the Wawa, Inc. Employee Stock Ownership Plan ("ESOP"), as produced by Defendants

Exhibit 3: 2006 SPD for the Wawa, Inc. ESOP, as produced by Defendants

Exhibit 4: 2011 SPD for the Wawa, Inc. ESOP, as produced by Defendants

Exhibit 5: 2014 SPD for the Wawa, Inc. ESOP, as produced by Defendants

Exhibit 6: 2014 Plan Document for the Wawa, Inc. ESOP, as produced by Defendants

Exhibit 7: Form 5500 for the Wawa ESOP for plan year 2014

Exhibit 8: Defendants' Objections and Responses to Plaintiffs' First Request for Admissions to Defendants

Exhibit 9: Defendants' Responses to Plaintiffs' Amended Second Set of Interrogatories

Exhibit 10: Amendment No. 4 to the Wawa, Inc. ESOP, effective August 30, 2015, as produced by Defendants

Exhibit 11: 2010 Plan Document for the Wawa, Inc. ESOP, as produced by Defendants

Exhibit 12: Excerpts from the final transcript from the deposition of Plaintiff Andrew Dorley

Exhibit 13: Excerpts from the final transcript from the deposition of Plaintiff Greg Pfeifer

Exhibit 14: Defendants' Supplemental Responses to Plaintiffs' First Request for Admissions to Defendants

**Pfeifer Declaration:**

Exhibit 1: Class Representative Agreement

Exhibit 2: 2002 SPD for the Wawa, Inc. ESOP

Exhibit 3: Letter to Terminated Employee Participants—ESOP Amendment

Exhibit 4: Letter to Terminated Employee Participants—Distribution Election

**<u>Dorley Declaration:</u>**

Exhibit 1: Class Representative Agreement

**<u>DiLoreto Declaration:</u>**

Exhibit 1: Class Representative Agreement

**<u>Barton Declaration:</u>**

Exhibit 1: Cohen Milstein Sellers & Toll PLLC Firm Resume as of November, 2016

## I.     INTRODUCTION

The named Plaintiffs, Greg Pfeifer and Andrew Dorley, are former Wawa, Inc. ("Wawa") employees who remained participants in the Wawa, Inc. Employee Stock Ownership Plan ("ESOP" or "Plan") after their Wawa employment ended.  Prior to 2015, the ESOP permitted terminated employee participants such as Plaintiffs to hold Wawa stock in their ESOP accounts until retirement age.  In 2015, however, Wawa amended the ESOP to force (1) the liquidation of the Wawa stock held by terminated employee participants, and (2) distribution of the proceeds out of the ESOP.  Thus, on September 11, 2015, Defendants Wood and Stoeckel—the ESOP's trustees—sold approximately 26,000 shares of Wawa stock held by terminated employee participants to Wawa for $6,940 per share and Wawa retired those shares.  The most recent valuation of Wawa stock (as of September 2016) is $8,616 per share—nearly 25% higher than the price forced upon Plaintiffs and other terminated employee participants.

The Amended Complaint alleges nine claims under the Employee Retirement Income Security Act ("ERISA").  All of the claims arise from (1) Defendants' alleged violation of rights under Plan documents and other class-wide communications, such as a participant's right to enforce the terms of the Plan in effect when he or she terminated employment under unilateral contract principles; or (2) Defendants' alleged violations of ERISA's fiduciary provisions in valuing Wawa stock for the September 2015 forced sale.

This action is appropriate for class certification because the underlying facts, and the legal claims arising from those facts, are the same for all members of the proposed class. Namely, all members of the proposed class are participants in, beneficiaries of, or alternate payees under the Wawa ESOP, and have the same rights under the Plan and seek to recover the same losses on behalf of the ESOP arising from the improper valuation of Wawa stock in the September 2015 forced sale.  Defendants' alleged violations of ERISA's fiduciary rules and

1

other rights under the ESOP and ERISA are the same for all class members: if Defendants breached their duties to one class member, they breached their duty to all class members.

Thus, the claims of named Plaintiffs Greg Pfeifer, Andrew Dorley, and class representative Michael DiLoreto, and the facts giving rise to them, are the same for all members of the proposed Class. The claims arise under ERISA sections 502(a)(2), 502(a)(3), 404, 406, 409, and 410, which together empower plan participants to bring a civil action to hold plan fiduciaries personally liable for losses to a plan resulting from fiduciary violations, and seek appropriate equitable relief to enforce the terms of the plan or ERISA, or remedy violations of the terms of the plan or ERISA. 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), 1106, 1109, 1110. Plaintiffs' claims focus exclusively on the conduct of the Defendants in adopting and implementing the 2015 Plan Amendment.

The prerequisites of Federal Rule of Civil Procedure 23 are easily met here. The class numbers more than two thousand, the primary questions of fact and law surrounding Defendants' conduct are the same for all class members, Plaintiffs' claims are typical of the class, and Plaintiffs and their counsel will adequately represent the proposed class. Further, because the Court's adjudication of these ESOP issues for one participant would effectively resolve the issues for all class members, and separate actions by individual class members would create the risk of inconsistent standards of conduct for ESOP fiduciaries, this case meets the requirements of Rule 23(b)(1). The Court can also certify the class under Rule 23(b)(2), because Defendants have acted on grounds that apply generally to the class and Plaintiffs seek a declaratory or injunctive remedy to provide relief to all class members. Alternatively, the class may be certified under 23(b)(3) because common questions of law and fact predominate and a class action is superior to other methods for resolving these claims. Indeed, Defendants have

2

stipulated to class certification of many claims and issues, including ascertainability of the class, numerosity, and commonality and typicality as to Counts I, II, III, V, VIII and IX.  Dkt. No. 75.

Defendants apparently dispute only a few issues regarding class certification.  Defendants contend that Plaintiffs' claims are not typical of the Class as to Count VI because the unilateral contract rights of ESOP participants depend upon the reason for each participant's termination.  According to Defendants, participants who were terminated for cause should not have any unilateral contract rights because they did not provide satisfactory performance.  The Plan documents in effect during the class period, however, did not contain any provision requiring satisfactory performance or setting different rights for participants who were terminated for cause.  Defendants also seem to allege that Plaintiff Dorley is not an adequate class representative because he now works for a Wawa competitor and therefore should not own Wawa stock or receive Wawa quarterly reports.  Many former Wawa employees have gone to work for competitors while remaining Wawa shareholders (both in the ESOP and outside the ESOP), and Wawa has not expressed any concern about a possible conflict until now.  Finally, Defendants assert that ESOP participants received different communications about their rights under the Plan and each participant would need to show detrimental reliance, and therefore Plaintiffs' misrepresentation claims in Counts IV and VII are not typical.  These claims, however, are based on class-wide communications such as the Summary Plan Descriptions ("SPDs") that Defendants provided to all ESOP participants.  Moreover, the Supreme Court has held that participants do not need to show detrimental reliance in order to obtain equitable remedies for fiduciary misrepresentations.

## II.    FACTUAL BACKGROUND

Wawa is a rapidly expanding chain of convenience stores/gas stations primarily located along the East Coast of the United States.  Wawa established their ESOP in 1992.  Defendants'

Answer and Affirmative Defenses to Plaintiffs' Amended Complaint ("Answer") ¶ 26, Dkt. No. 62.  The primary asset of the ESOP is equity holdings in Wawa, and the ESOP allocates shares of Wawa stock to the accounts of participants.  Answer ¶ 3.

Wawa stock has been an excellent investment in recent years.  On December 31, 2010, it was valued at $2,766.00 per share.  The share price increased every year after that, and by June 30, 2015, the stock was valued at $6,940.00 per share. Amended Complaint ("Am. Compl.") ¶ 74, Dkt. No. 20.

Participants in the ESOP receive Summary Plan Descriptions ("SPDs") from Wawa during their employment.  Answer ¶ 33; Declaration of Jamie Bowers ("Bowers Declaration"), Exhibit 1 (Deposition of Daniel Peterson ("Peterson Deposition") at 70:18–25).  A provision in the SPD stated that the vested benefits of Terminated Employee Participants would be "paid in the same form and manner as retirement benefits" as described in the Part E of the SPD, "Retirement Benefits."  Bowers Declaration, Exhibits 2, 3, 4, & 5 (2004 SPD at 8–9, 2006 SPD at 9, 2011 SPD at 9, 2014 SPD at 12); Declaration of Greg Pfeifer ("Pfeifer Declaration"), Exhibit 2 (2002 SPD at 9).  The SPD also represented that Terminated Employee Participants with more than $5,000 in their ESOP accounts could continue to hold Wawa stock until age 68, when they could choose between a lump payment or installment payments of their retirement benefits.  Bowers Declaration, Exhibits 2, 3, 4 & 5 (2004 SPD at 8–9, 2006 SPD at 9, 2011 SPD at 9, 2014 SPD at 12).  The SPD promised that "no amendment to the Plan will reduce the benefit you have already earned, or divest you of any entitlement to a benefit."  *Id*. (2004 SPD at 14, 2006 SPD at 16, 2011 SPD at 15, 2014 SPD at 17).  The Plan document also provided the same with respect to Terminated Employee Participants.  Bowers Declaration, Exhibit 6 (2014 Plan Document at 44).

4

Wawa converted from a C-Corporation to an S-Corporation in December 2014 by an internal merger. Answer ¶ 45. The merger gave Wawa shareholders outside of the ESOP (who owned at least 250 shares) the choice of either receiving shares in the new Wawa entity or $7,000 cash for each share of Wawa stock. Pls.' Opposition to Defs.' Motion to Dismiss, Exhibit 3, Dkt. No. 41-3. Prior to 2015, the ESOP's trustees determined the value of Wawa stock on an annual basis and Wawa paid quarterly dividends to shareholders, including ESOP participants. Answer ¶ 49. After the conversion to an S-Corporation, Wawa began quarterly tax distributions to shareholders, in addition to dividends, and began obtaining quarterly valuations of the ESOP's Wawa stock. Answer ¶ 49.

Defendants Wood and Stoeckel (trustees of the ESOP) sent out a letter dated August 10, 2015 to all Terminated Employee Participants stating that Wawa adopted an amendment to the ESOP on August 7, 2015 requiring the sale of Wawa stock in the ESOP accounts of Terminated Employee Participants who ended employment with Wawa before January 1, 2015. Pfeifer Declaration, Exhibit 3 (Letter to Terminated Employee Participants—ESOP Amendment). The Terminated Employee Participants received a separate letter dated August 10, 2015 with distribution election instructions—Terminated Employee Participants would choose between a lump sum distribution from the ESOP or a rollover to an IRA or another qualified employer plan. Pfeifer Declaration, Exhibit 4 (Letter to Terminated Employee Participants—Distribution Instructions). If they did not choose, the ESOP would transfer the distribution into the Wawa 401(k) Plan. *Id.*

The liquidation, or forced sale, occurred on September 11, 2015. Bowers Declaration, Exhibit 7 (Form 5500 for the Wawa ESOP at 15 "Subsequent Events"). The Terminated Employee Participants were charged a $50.00 distribution charge from their ESOP accounts for

the distribution.  Answer ¶ 63.  Defendants used a valuation from June 28, 2015 of $6,940.00 per

share for the September 11, 2015 forced sale.  Defs.' Motion to Dismiss, Exhibits D & E, Dkt.

Nos. 31-5 & 31-6.

Plaintiffs Pfeifer and Dorley are both Terminated Employee Participants who held Wawa

stock in the ESOP until the forced sale.  Pfeifer Declaration ¶¶ 3–5; Declaration of Andrew

Dorley ("Dorley Declaration") ¶¶ 6–8.  In February 2016, they filed suit against Wawa and the

other Defendants based on the adoption and implementation of the 2015 Plan Amendment to the

Wawa ESOP.  Complaint, Dkt. No. 1.

The Amended Complaint asserts nine Counts on behalf of the class.  Count I states that

Defendants breached their fiduciary duties in the September 2015 forced sale.  Am. Compl. ¶¶

95–105.  Count II alleges that Defendants engaged in a prohibited transaction because Wawa

paid less than fair market value for Wawa shares in the forced sale and failed to conduct an

adequate investigation as to the fair market value of Wawa stock.  Am. Compl. ¶¶ 106–13.  In

addition, Count II alleges that Defendants Wood and Stoeckel engaged in a prohibited

transaction because they received a personal benefit from the 2015 forced sale.  *Id.*  Count III

claims that Defendants breached their fiduciary duty by transferring participants' assets from the

Wawa ESOP in a manner that decreased participants' benefits due to the incorrect valuation and

the $50 distribution charge.  Am. Compl. ¶¶ 114–21.  Count IV seeks a determination that

Defendants misrepresented that Terminated Employee Participants would be able to continue to

hold Wawa stock.  Am. Compl. ¶¶ 122–28.  Count V avers that the 2015 Plan Amendment

violated the anti-cutback provision of ERISA § 204(g) with respect to the involuntary

distribution.  Am. Compl. ¶¶ 129–40.  Count VI seeks to invalidate the Plan Amendment because

Defendants unilaterally amended the terms of the ESOP Plan after Plaintiffs completed

performance.  Am. Compl. ¶¶ 141–46.  Count VII claims that Defendants violated ERISA § 102 by providing inaccurate information in the SPD.  Am. Compl. ¶¶ 147–53.  Count VIII claims that Defendant Wawa failed to monitor the other fiduciaries.  Am. Compl. ¶¶ 154–59.  And finally, Count IX alleges to the extent that the Plan attempts to disclaim liability of its fiduciaries for fiduciary breaches, that provision is void as a matter of public policy.  Am. Compl. ¶¶ 160–65.

The relief requested is as follows: (1) a declaration that the Class is entitled to have their rights under the Plan determined and benefits calculated and/or paid in conformity with the terms of the Plan document in effect at the time of their termination; (2) a declaration that Defendants have breached their fiduciary duties to the Class and engaged in a prohibited transaction; (3) an injunction preventing Defendants from further violations of their fiduciary duties; (4) an order requiring that Defendants restore to the ESOP or successor trusts any losses resulting from their breaches and any profits they made through use of the assets of the ESOP; (5) an order that Defendants provide other equitable relief, including surcharge, rescission, reformation of the Plan, an accounting for profits, and imposing a constructive trust/equitable lien; (6) invalidation of the 2015 Plan Amendment; (7) an order requiring Defendants restore any losses suffered by Plaintiffs and the Class from the forced sale and disgorgement; (8) removal of the Trustees and members of the Committee as fiduciaries and enjoining any breaching fiduciaries from acting as fiduciaries for any plan that covers Wawa employees, along with appointing an independent fiduciary to manage the Wawa ESOP; (9) order the proceeds of any recovery for the Plan to be allocated to the accounts of the Class; (10) order that pursuant to ERISA § 206(d)(4), any amount to be paid to or necessary to restore Plaintiffs' ESOP accounts can be satisfied by using or transferring any breaching fiduciary's ESOP account in the Plan to the extent of his or her liability; (11) a declaration that any indemnification agreement between Defendants and the

ESOP violates ERISA § 410 and is null and void; (12) an award of reasonable attorneys' fees and costs to Plaintiffs under ERISA § 502(g) and/or the common fund doctrine; (13) an order directing Defendants to pay prejudgment interest; and (14) any other appropriate relief.  Am. Compl. at Prayer for Relief ¶¶ A–O.

## III.   ARGUMENT

Certification of a class is required where the party seeking certification demonstrates the four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b).  Fed. R. Civ. P. 23; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997).  An analysis of whether a class can be certified may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  However, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 133 S. Ct. 1184, 1195 (2013).  Once the elements of Rule 23 are met, a district court does not have discretion to deny certification of a class.  *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (rejecting argument that court has discretion to deny class certification because '[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").  Courts recognize that "ERISA cases are well-suited for class action certification pursuant to Rule 23." *Thompson v. Linvatec Corp.*, No. 6:06-CV-0404(NPM/GJD), 2007 WL 1526418, at *5 (N.D.N.Y. May 22, 2007) (certifying class).  Here too, this action satisfies all the requirements of Rule 23 and thus should be certified as a class action.

A.   The Class is Ascertainable

To certify a Rule 23(b)(3) class, the class must be ascertainable.[1] *Byrd's v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).  The Third Circuit's ascertainability test has two prongs: (1) the class is "defined with reference to objective criteria," and (2) there is a "reliable and administratively feasible mechanism[] for determining whether putative class members fall within the class definition." *Id.* (quotation omitted).  The Third Circuit, however, has rejected an ascertainability requirement for classes seeking injunctive or declaratory relief.  *Shelton v. Bledsoe*, 775 F.3d 554, 562 (3d Cir. 2015) ("The ascertainability requirement ensures that the procedural safeguards necessary for litigation as a (b)(3) class are met, but it need not (and should not) perform the same function in (b)(2) litigation.")   Nonetheless, the class here is ascertainable.  The Class that Plaintiffs seek to certify is defined as follows:

> All persons who were Terminated Employee Participants in the ESOP as of January 1, 2015 with account balances greater than $5,000.00 and the beneficiaries of such participants and any Alternate Payees whose stock in the Wawa ESOP was liquidated pursuant to 2015 Plan Amendment (i.e. Plan Amendment No. 4) ("Class").[2]

Dkt. No. 20, Am. Compl. ¶ 84.[3]  Membership in the Class is defined by (1) status as a participant, beneficiary, or alternate payee; (2) ownership of Wawa stock; and (3) the account balance.  All of these factors may be determined from the ESOP records.  Defendants have already produced a list of class members and have stipulated to ascertainability.  *See* Bowers

---

[1] Although Plaintiffs believe that the Class here is properly certified under both Rule 23(b)(1) and (b)(2), they move alternatively for certification under (b)(3).

[2] Excluded from the Class are the Defendant Trustees and members of the Defendant Committee and their immediate families; the officers and directors of Defendant Wawa and their immediate families; and legal representatives, successors, heirs, and assigns of any such excluded persons.

[3] The Class definition has been slightly altered from the definition put forth in the First Amended Complaint to clearly include all Alternate Payees.

Declaration ¶ 17; Stipulation to Class Certification as to Certain Issues and Claims ("Stipulation") ¶ 2, Dkt. No. 75.  Thus, the requirement for an ascertainable class is easily met.

  B. <u>The Proposed Class Meets Each of the Preconditions of Rule 23(a)</u>

   Rule 23(a) provides that before a class may be certified, it must satisfy the following four preconditions: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. Rule 23(a). All these criteria are satisfied here.

   1. <u>The Class is So Numerous That Joinder of All Members is Impracticable</u>

   Rule 23(a)(1) requires that the class is so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  This requirement can be satisfied by mere numbers alone, but includes other factors such as the geographic location of members of the class and the relative ease or difficulty in identifying members of the class for joinder purposes.  *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007) (finding that geographic dispersion affects whether joinder of all individual potential class members is practicable).  The Third Circuit has concluded that when the proposed class exceeds 40 members, "the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (stating that forty potential plaintiffs general satisfies Rule 23(a)(1) and finding that the number of forty-one potential plaintiffs by itself was sufficient for numerosity).  Here, Defendants have admitted that the Class consists of more than 2,000 persons.  Bowers Declaration, Exhibit 8 (Defs.' Resp. to Pls.' First Request for Admissions, No. 6.); Exhibit 9 (Defs.' Resp. to Pls.' Amended Second Set of Interrogatories, No. 4) (conceding Rule 23(a)(1) is met); *see also* Stipulation ¶ 3.  Thus, Rule 23(a)(1) is satisfied.

2.      <u>Common Questions of Law or Fact Exist</u>

Rule 23(a)(2) requires that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This does not require that all questions of law and fact are common; rather, the requirement may be satisfied by a single common issue.  *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (citation omitted).  The Supreme Court has expressly recognized that "'a single [common] question'" will satisfy Rule 23(a)(2).  *Dukes*, 564 U.S. at 359.  To satisfy the "commonality" prerequisite, plaintiffs' claims "[m]ust depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 350.  In this Circuit, commonality exists "even when not all members of the plaintiff class suffered an actual injury, when class members did not have identical claims, and, most dramatically, when some members' claims were arguably not even viable." *In re National Football League Players Concussion Injury Litig.*, 821 F.3d 410, 427 (3d Cir. 2016) (citation omitted).  The Supreme Court likewise explained that the existence of "a general policy" or a "uniform employment practice . . . would provide the commonality needed."  *Dukes*, 564 U.S. at 355.  In this case, Defendants do not contest that Rule 23(a)(2) is satisfied as to Counts I, II, III, V, VIII, and IX.  Stipulation ¶ 4.

In ERISA cases challenging the interpretation of the plan or a plan amendment, the theory of liability of each member is identical.  *Cottillion v. United Ref. Co*., No. CIV.A. 09-140E, 2013 WL 5936368, at *3–4 (W.D. Pa. Nov. 5, 2013) (citing cases certifying classes challenging legality of ERISA plan amendments), *aff'd*, 781 F.3d 47 (3d Cir. 2015); *Savani v. Washington Safety Mgmt. Sols.*, *LLC*, No. 1:06-cv-02806, 2012 WL 3757239, at *3 (D.S.C. Aug. 28, 2012) (explaining that in ERISA cases challenging the interpretation of the plan or an amendment to the plan, "[t]he theory of liability of each member is identical").  These cases do

11

not involve individualized benefit determinations, but rather the "lawsuit target[s] a single decision that was universally applied and affected each putative class member in the same fashion." *Cottillion*, 2013 WL 5936368, at *3. The same is true here: the claims here all challenge a general policy—the adoption and implementation of the 2015 Plan Amendment to the Wawa ESOP. The claims of the Class rest on the same questions: whether the 2015 Plan Amendment is valid and whether the valuation of Wawa stock was proper. Wawa's decision to amend the Plan to force the liquidation of the Terminated Employee Participants' Wawa stock resulted in the claims alleged in the Complaint, including: (1) claims that Wawa used an improper valuation for Wawa stock in the forced sale (Counts I, II, III, and VIII); (2) claims that Wawa misrepresented to participants that they would continue to be entitled to hold Wawa stock (Counts IV, VII, and VIII); (3) a claim that Wawa improperly cutback benefits accrued by participants by involuntarily distributing their Wawa ESOP accounts (Count V); (4) a claim that the 2015 Plan Amendment was invalid because it changed the terms of the Plan after the Class members left employment (Count VI); and finally, (5) a claim that the Defendants included a provision in the Wawa ESOP Plan to indemnify fiduciaries in violation of ERISA's prohibition against relieving fiduciaries from responsibility or liability to beneficiaries (Count IX).

The claims for improper valuation of Wawa stock—Counts I, II, III, and VIII—are identical with respect to Plaintiffs and the putative Class. Plaintiffs and the Class are all Terminated Employee Participants in the ESOP (or Alternate Payees), who had their Wawa stock liquidated on September 11, 2015. The alleged improper valuation of their stock leads to common questions of law and fact among the entire class, including whether (1) Wawa's use of the June 28, 2015 valuation price was proper; (2) Defendants conducted a reasonable investigation as to the fair market value of Wawa stock at the time of the forced sale; (3)

Defendants knew that the transfer resulted in a decrease of benefits to participants and thus breached their fiduciary duty; (4) Wawa engaged in a prohibited transaction by failing to ensure that the price paid for the stock constituted fair market value; and (5) Defendants Wood and Stoeckel engaged in a prohibited transaction by receiving a personal benefit from the forced sale.

Claims that a stock was improperly valued or sold at an incorrect price satisfy this requirement. *See, e.g.*, *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001) (finding common questions of law and fact under Rule 23(a)(2) as to the sale of securities at the price offered on the central National Best Bid and Offer system without investigating other, potentially higher prices); *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (finding common issues where plaintiff alleged that defendants sold ESOP stock for less than fair market value); *In re Rent-Way Securities Litigation*, 218 F.R.D. 101, 112 (W.D. Pa. 2003) (finding the commonality requirement satisfied as to questions concerning whether the price of Rent-Way's stock was artificially inflated); *In re Ikon Office Solutions, Inc*., 191 F.R.D. 457, 462–63 (E.D. Pa. 2000) (certifying claim that Ikon stock price had been artificially inflated). Furthermore, the alleged injury is exactly the same for each class member: the participants received a distribution for which each Wawa share was undervalued by the same amount, due to the use of the June 28, 2015 valuation. Liability in this case depends on the resolution of these common factual and legal questions; accordingly, the commonality requirement is satisfied as to the valuation claims in Counts I, II, III, and VIII.

As to Plaintiffs' misrepresentation claims in Counts IV, VII, and VIII, these claims also satisfy the Rule 23(a)(2) prerequisite. Each of these claims involves statements and promises made by the Wawa Defendants that Plaintiffs and the Class would be able to remain in the ESOP and hold Wawa stock. These claims center around several common questions of law and fact.

To determine whether Defendants are liable, the Court must resolve common questions, including whether the Wawa Defendants are fiduciaries, whether Defendants made misrepresentations to participants in the SPDs by stating that Wawa would not divest participants of any entitlement to benefits, whether Defendants misrepresented to participants in the SPD that they would have their benefits paid in the same form and manner as retirement benefits, and whether these misrepresentations breached the fiduciary duties Defendants owed to Plaintiffs. The answers to these questions are the same as to each terminated participant, and each participant suffered the same injury as a result of the misrepresentations—the expectation that they would be entitled to continue to hold Wawa stock.

Defendants contend that Counts IV and VII require proof of detrimental reliance, causation, injury, and extraordinary circumstances, which are individualized questions of fact that defeat the common questions at issue.  Bowers Declaration, Exhibit 9 (Defs.' Amended Resp. to Pls.' Second Set of Interrogatories, No. 4).  First, the commonality requirement does not require an absence of individualized issues, however, only that a common question of law and fact exist.  *See Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (stating that the presence of individual questions does not preclude a finding that predominance requirements or commonality requirements are satisfied).  Second, a claim that defendants breached their fiduciary duty through misrepresentations does not require plaintiffs to demonstrate detrimental reliance.  *CIGNA Corp. v. Amara*, 563 U.S. 421, 443 (2011) ("Looking to the law of equity, there is no general principle that 'detrimental reliance' must be proved before a remedy is decreed.").  Any requirement that reliance be demonstrated depends on the remedy requested.  *Id.*  In *Amara*, the Supreme Court concluded that the remedies requested here do not require a showing of "detrimental reliance."  *Id.*  With respect to causation, the appropriate inquiry is

14

Defendants' action. *Bunnion v. Consolidated Rail Corp.*, No. Civ. A. 97-4877, 1998 WL 372644, at *6 (E.D. Pa. May 14, 1998) (holding that the focus on a breach of fiduciary duty is the conduct of defendants, and that company-wide misrepresentations through documents or emails that allegedly breached the fiduciary duties defendants owed to plaintiffs met the commonality requirement). Defendants made the alleged misrepresentations in plan-wide communications sent out to all participants. None of the challenges Defendants raise are the type of individualized issues that defeat the common questions raised by Plaintiffs' misrepresentation claims. Accordingly, Plaintiffs' misrepresentation claims satisfy the commonality requirement.

Plaintiffs' next claim is that Defendants cut back Plaintiffs' accrued benefits by involuntarily distributing Plaintiffs' (and the Class members') ESOP accounts either to the participants or to participants' Wawa 401(k) account. The common policy as to all Class members is stated by Wawa in the 2015 Plan Amendment: "All liquidated proceeds from the ESOP Stock Account of [the Terminated Employee Participants] shall be transferred to the Participant's account in the 401(k) Plan and invested in accordance with the Participant's investment elections in effect under the 401(k) Plan at the time of the transfer . . . unless the Participant elects otherwise." Bowers Declaration, Exhibit 10 (2015 Plan Amendment). The injury for each Class member is the same from the forced sale—their distribution was reduced by a $50 distribution fee. Thus, Plaintiffs' claim that their benefits were reduced as a result of the Plan Amendment satisfies the commonality requirement.

Plaintiffs also allege that Defendants violated unilateral contract principles by changing Former Employee Participants' rights under the Plan after Class members left their employment. Like the anti-cutback claim, the same policy applied to all putative Class members. When Plaintiffs and Class members finished employment, the terms of the Plan allowed them to

15

continue to hold Wawa stock. Later, Defendants passed the 2015 Plan Amendment, which required that the Wawa stock of all Terminated Employee Participants be liquidated. The common question as to all Class members is whether application of the 2015 Plan Amendment to their accounts is a violation of basic contract principles. *See Cottillion*, 2013 WL 5936368, at *3. As such, this claim satisfies the 23(a)(2) prerequisite for certification of the Class.

Finally, Plaintiffs' last claim—that Defendants cannot disclaim liability for fiduciary breaches through an indemnification clause—involves common questions as to all Class members. These questions include whether Defendants are fiduciaries and whether Defendants violated ERISA by including a provision in the Wawa ESOP purporting to relieve fiduciaries from liability for a breach. This is sufficient to support a finding of commonality. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009) (stating that common questions including whether defendants breached their fiduciary duties satisfied the commonality requirement); *Thomas v. SmithKline Beecham Corp*., 201 F.R.D. 386, 392–94 (E.D. Pa. 2001) (finding that plaintiffs presented common questions of law regarding the plan administrators' interpretation of the plan).

3.    Plaintiffs' Claims Are Typical of the Class and Defendants Have Identified No Unique Defenses

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that the class representatives are sufficiently *similar* to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class. *Schering Plough Corp.*, 589 F.3d at 597. The Third Circuit has explained that the analysis focuses on "the similarity of the legal theory and legal claims; the similarity of the individual circumstances on

16

which those theories and claims are based; and the extent to which the proposed representative

may face significant unique or atypical defenses to her claims." *Id*. at 598–99.  The Third Circuit

has repeatedly emphasized that this analysis sets a "'low threshold' for typicality." *Nat'l Football*

*League Players Concussion Injury Litig*., 821 F.3d at 428 (citing cases).

a.      *Plaintiffs' Claims are Typical of the Class*

The similarity between claims of the representative and those of the class "does not have

to be perfect." *Schering Plough Corp.*, 589 F.3d at 598.  "[T]he named plaintiffs' claims must

merely be 'typical, in common-sense terms, of the class, thus suggesting that the incentives of

the plaintiffs are aligned with those of the class.'"  *Id.* (quoting *Beck v. Maximus,* 457 F.3d 291,

295–96 (3d Cir. 2006)).  "Even relatively pronounced factual differences will generally not

preclude a finding of typicality where there is a strong similarity of legal theories or where the

claim arises from the same practice or course of conduct."  *Nat'l Football League Players*

*Concussion Injury Litig.*, 821 F.3d at 428 (quoting *In re Prudential Ins. Co. Am. Sales Practice*

*Litig. Agent Actions,* 148 F.3d 283, 311 (3d Cir.1998)).  The Third Circuit has explained that

"cases challenging the same unlawful conduct which affects both the named plaintiffs and the

putative class usually satisfy the typicality requirement irrespective of the varying fact patterns

underlying the individual claims."  *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 58 (3d

Cir. 1994) (citation omitted).  Here, Plaintiffs' claims are typical of the Class.

(1)      Counts I, II, III, VIII & IX

In ERISA cases alleging breach of fiduciary duty, courts in this and other Circuits have

often found that ERISA claims meet the typicality requirement.  *E.g., Mehling v. N.Y. Life Ins.*

*Co.*, 246 F.R.D. 467, 475 (E.D. Pa. 2007) (improper investment into proprietary funds); *Stanford*

*v. Foamex L.P.,* 263 F.R.D. 156, 167 (E.D. Pa. 2009) (certifying claims that defendants breached

their fiduciary duties by making unauthorized sales of Foamex International stock and

17

transferring fund investments in violation of a plan amendment).  The same is true for claims seeking to establish plaintiffs' rights and benefits under the Plan and challenges to plan amendments.  *Cottillion*, 2013 WL 5936368, at *4; *Pender v. Bank of America Corp.*, 269 F.R.D. 589, 597 (W.D.N.C. 2010) (finding that a claim that an amendment to an ERISA plan was invalid was "the exact claim . . . that all class members would have"); *Stanford*, 263 F.R.D. at 168 (finding that claim contesting an ERISA plan amendment arose from the same course of defendants' conduct and thus satisfied the typicality requirement).

With respect to the valuation claims, Counts I, II, III VIII and IX, Defendants do not challenge certification of these claims.  Stipulation ¶ 4.  These claims arise from the same course of conduct by Defendants.  Plaintiffs and the Class members owned stock in the Wawa ESOP prior to the September 11, 2015 liquidation.  These claims challenge whether Defendants appropriately valued the stock in connection with the forced sale—including whether Defendants failed to conduct a reasonable investigation as to the fair market value of Wawa stock, and forced the sale of participants' Wawa stock for less than fair market value—and whether the liquidation and transfer were permissible.  Thus, Counts I, II, III, and VIII arise from the same conduct by Defendants and satisfy the "typicality" requirement of Rule 23.[4]

(2)     Count VI

---

[4] Count IX is Plaintiffs' claim that Defendants are prohibited by ERISA § 410 from attempting to relieve fiduciaries for liability for a breach of fiduciary duty.  The factual predicate for the claim is identical as to all Class members: Section 10.6 of the ESOP states that Wawa will indemnify members of the Committee and other employees or directors of Wawa for expenses incurred in connection with administrative functions and duties under the Plan (except in cases of willful misconduct).  Bowers Declaration, Exhibit 6 (2014 Plan Document at 68, § 10.6).  The legal theory behind Plaintiffs' claim is that this is a breach of ERISA § 410, which provides that a provision in a Plan compensating fiduciaries for a breach is void as against public policy.  Accordingly, this claim (Count IX) also satisfies the typicality requirement.

Count VI alleges that Defendants unilaterally amended the terms of the ESOP after Plaintiffs and the Class completed performance.  The underlying factual basis for this claim—that the Terminated Employee Participants had ended employment and Defendants subsequently altered the terms of the Plan—is the same as to Plaintiffs and each member of the Class.  The legal theory behind the claim, that unilateral contract principles prohibit Defendants from changing the terms of the Plan after participants completed performance, is also the same for each Class member.

Nonetheless, Defendants contest the Rule 23(a)(3) requirement because they suggest that the  circumstances of each Class member's termination is relevant.  Bowers Declaration, Exhibit 9 (Defs.' Responses to Plaintiffs' Amended Second Set of Interrogatories, No. 4).  This assertion is based on a fundamental misunderstanding of this claim as well as the terms of the ESOP.

First, as explained by Plaintiffs in their opposition to Defendants' motion to dismiss and in opposition to Defendants' motion for reconsideration, this claim is based on the well-established principle that when an employee is terminated, the plan is required to determine the employee's rights and benefits in accordance with the plan in effect at the time of the employee's termination.  Pls.' Opposition to Defs.' Motion to Dismiss, Dkt. No. 41 at 13–17; Pls.' Opposition to Defs.' Motion for Reconsideration[…], Dkt. No. 70 at 5–7.  As a result, any subsequent amendment that defeats those rights is void and unenforceable.  Pls.' Opposition to Defs.' Motion to Dismiss, Dkt. No. 41 at 13–19; Pls.' Opposition to Defs.' Motion for Reconsideration[…], Dkt. No. 70 at 8–9.  As this claim is essentially a claim to invalidate an illegal amendment, the same analysis under Rule 23(a)(3) applies to Count VI as applies to Plaintiffs' ERISA § 204(g) claim.

Second, the factual basis for Defendants' assertion contradicts the applicable terms of the Plan Document.  Prior to 2015, the Wawa ESOP did not distinguish between employees based on whether they had been terminated for cause.  *See* Bowers Declaration, Exhibit 11 (2010 Plan Document § 5.2 at 27–28); Exhibit 10 (2015 Plan Amendment); Exhibit 1 (Peterson Deposition at 120:22–121:25).  When Plaintiffs and every Class member terminated employment, the Plan did not include a provision differentiating participants' post-termination rights in the ESOP based on job performance.  Bowers Declaration, Exhibit 6 (2014 Plan Document § 2.2 at 19).  Thus, the basis of Defendants' opposition to this claim is simply unsupported by terms of the ESOP.

Wawa did not add a provision modifying the distribution rights of ESOP participants terminated for cause until the 2015 Plan Amendment.  *Compare* Bowers Declaration, Exhibit 10 (2015 Plan Amendment, Section 5.2) *with* Bowers Declaration, Exhibit 6 (2014 Plan Document, Section 5.2).  As a result of the 2015 Plan Amendment, *effective January 1, 2015*, Plan participants who are eligible to retire are permitted to retain their Wawa stock for up to 5 years unless they were terminated for cause.  Bowers Declaration, Exhibit 10 (2015 Plan Amendment, Section 5.2(d)-(f)).  Thus, when Class members ended employment, i.e., before January 1, 2015, no rights under the ESOP depended on job performance.  Bowers Declaration, Exhibit 6 (2014 Plan Document, Section 2.2).  "When a contract uses different language in proximate and similar provisions, we commonly understand the provisions to illuminate one another and assume that the parties' use of different language was intended to convey different meanings."  *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1156–57 (10th Cir. 2007).  Therefore, the 2015 Plan Amendment shows that termination for cause did not alter a participant's rights under the ESOP prior to January 1, 2015.

20

(3)     Counts IV and VII

Plaintiffs' disclosure claims are typical of the Class.  *See In re Polaroid ERISA Litigation*, 240 F.R.D. 65, 76 (S.D.N.Y. 2006) ("The class seeks recovery for the Plan as a whole on the basis of ... plan-wide misrepresentations and non-disclosures. Plaintiffs' claims are accordingly typical of the class as a whole."); *Rogers v. Baxter Intern., Inc*., No. 04-6476, 2006 WL 794734, at *4 (N.D. Ill. Mar. 22, 2006) (in ERISA breach of fiduciary duty action alleging misrepresentations, "individual issues of materiality and reliance" do not make the plaintiff's claim atypical where plaintiff "contends the alleged misrepresentations were made to class members in general…." ).  As discussed above, Counts IV and VII are both based on written statements made by Defendants in documents and the SPDs, which were distributed to all Class members.  In the case of the SPD, this was a document which was required to be and was distributed to all participants.  Bowers Declaration, Exhibit 1 (Peterson Deposition at 67:18–68:15; 70:6–71:16).  Importantly, the critical language in all of the SPDs that have been located and produced by Defendants is *identical.*  Bowers Declaration, Exhibits 2, 3, 4, & 5 (2004 SPD at 8–9, 14; 2006 SPD at 9, 16; 2011 SPD at 9, 15; 2014 SPD at 12, 17); Exhibit 1 (Peterson Deposition at 72:11–75:7); *see also* Pfeifer Declaration, Exhibit 2 (2002 SPD at 9, 10).  As the legal theory and the factual basis for these claims are not merely similar but identical, Plaintiffs' claims are necessarily typical of those of the Class.

Defendants contest typicality based on the mistaken assumption that these claims require proof of detrimental reliance, causation, injury, and extraordinary circumstances, which are individualized inquiries and thus cannot be typical of claims of the proposed class.   Bowers Declaration, Exhibit 9 (Defs.' Resp. to Pls.' Second Set of Interrogatories, No. 4).  First, such arguments are precluded by the Supreme Court's decision in *Amara*, which, as discussed above, held that breach of fiduciary duty claims based on detrimental reliance do not have to

21

demonstrate detrimental reliance.  *Amara*, 536 U.S. at 443.  Second, Plaintiffs' disclosure claims are typical of the Class because these claims focus on Defendants' conduct and plan-wide written communications with identical language.  Accordingly, the typicality requirement is satisfied for Plaintiffs' misrepresentation claims.  The Court should find that all of Plaintiffs' claims satisfy the typicality requirement of Rule 23(a)(3).

> b.      *Defendants Have Not Identified Any Unique Defenses*

In order for a defense to defeat class certification, the Third Circuit has explained that the proposed class representative would have to "be subject to a defense that is *both* inapplicable to many members of the class *and* likely to become a major focus of the litigation[.]"  *Schering Plough Corp.*, 589 F.3d at 599 (emphasis added).  The Third Circuit has placed that burden on Defendants:  "To defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial."  *Beck*, 457 F.3d at 300.  Yet merely raising the specter of a defense is insufficient: "If a court determines an asserted unique defense has no merit, the defense will not preclude class certification."  *Id.*   None of the Affirmative Defenses asserted in Defendants' Answer to the Complaint suggest that they have a unique defense against any of the proposed class representatives.  *See* Answer at 29–31 (Affirmative Defenses); *see also* Bowers Declaration, Exhibit 9 (Defs.' Resp. to Pls.' Amended Second Set of Interrogatories, No. 3).

> 4.      <u>The Proposed Class Representatives and their Counsel Will Fairly and
> Adequately Protect the Interests of the Class</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The purpose of the "adequacy" requirement is to "uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem*, 521 U.S. at 625.  The Third Circuit applies a two-part test to determine adequacy:  (1)

22

the court must inquire into the "qualifications of counsel to represent the class;" and (2) it must assess whether there are "conflicts of interest between named parties and the class they seek to represent." *Krimes v. JP Morgan Chase Bank, NA*, No. 15-cv-5087, 2016 WL 6276440, at *4 (E.D. Pa. Oct. 26, 2016) (citing *Prudential Ins. Co.*, 148 F.3d at 312 (internal quotation marks omitted)).  These requirements are easily met in this case.

a.     *The Proposed Class Representatives are Qualified*

The purpose of the adequacy requirement is to "ferret out" conflicts of interest and ensure that the named representative has the incentive to represent the claims of the class vigorously. *Dewey v. Volkswagen Akteingesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012).  With respect to any conflicts of interest, there are two questions to address: (1) whether an intra-class conflict exists, and if so, (2) whether the conflict is "fundamental." *Id.*  A fundamental conflict "exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.* (citing *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). Here, Plaintiffs have no intra-class conflicts sufficient to render them as inadequate representatives.  Their claims are identical to the claims of the rest of the Class and they have suffered the same injury.

Defendants may contend that Plaintiff Dorley has a conflict with the Class due to his post-Wawa employment.  After Plaintiff Dorley was terminated by Wawa, he worked for various companies, including 7-Eleven, SaladWorks, Trader Joe's, Aramark, and Ahold USA.  Bowers Declaration, Exhibit 12 (Deposition of Andrew Dorley ("Dorley Deposition") at 171–74).  Plaintiff Dorley recently started a new position with Speedway on November 28, 2016.  *Id.*  Defendants' theory, as evidenced by their deposition of Dorley, may be that Plaintiff Dorley has a conflict with the Class because he has also worked for competitors of Wawa and therefore

23

should not own Wawa stock.  This ignores that numerous other former employees (as well as members of Wawa's own Board) have also worked for Wawa's purported competitors.

The terms of the ESOP, however, indicate that Defendants have manufactured this purported conflict solely for purposes of this litigation.  Prior to the 2015 Plan Amendment, terminated employees were permitted to hold Wawa stock until age 68, regardless of where they worked afterwards.  Bowers Declaration, Exhibits 2, 3, 4, & 5 (2004 SPD at 6; 2006 SPD at 6; 2011 SPD at 9; 2014 SPD at 8–9).  If Wawa truly believed working for a competitor is incompatible with ownership of Wawa stock, why did Wawa allow former employees to continue to own their stock?   Indeed, there are a number of members of the Class who went on to work for competitors—including Aramark, RaceTrac, Thorntons and Circle K—but were still permitted to participate in the ESOP and receive financial updates regarding Wawa's performance.

Moreover, Plaintiff Dorley's employment with a competitor does not create a "fundamental conflict" with the rest of the Class.  Plaintiff Dorley and the Class are all pursuing the same recovery under ERISA.  *See In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation*, 795 F.3d 380, 394 (3d Cir. 2015) ("They are all pursuing damages under the same statutes and the same theories of liability . . . the differences among them will not . . . pit one group's interest against each other.").  Plaintiff Dorley's interests lie in maximizing recovery, which is aligned with the interests of the Class.  *See In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 208 (5th Cir. 1981) (the plaintiff's interest in seeking maximum possible recovery was a united common interest with the class, and plaintiff was not antagonistic to the class).  This is not a fundamental conflict such that Plaintiff Dorley would

benefit when other Class members are harmed—all Class members will recover equally.  Thus, Plaintiff Dorley's current employment cannot disqualify him from representing the class.

Next, Defendants may contend that Plaintiffs Pfeifer and Dorley gave confidential information about Wawa to their counsel in violation of the confidentiality "agreement" signed as employees, and this renders them inadequate representatives because they breached that contract.  *See* Bowers Declaration, Exhibit 12 (Dorley Deposition at 28:5–33:7); Exhibit 13 (Deposition of Greg Pfeifer ("Pfeifer Deposition") at 29:13–32:12).[5]  This argument fails for two reasons.  First, nothing produced by Plaintiffs Pfeifer or Dorley was confidential employee information.  All documents and information provided to counsel were distributed to ESOP participants or made available on Wawa's ESOP website.  *See* Pfeifer Declaration ¶ 7; Dorley Declaration ¶ 11; Declaration of Michael DiLoreto ("DiLoreto Declaration") ¶ 7.  Second, sharing confidential information with counsel is protected by the attorney-client privilege.  As stated by the Supreme Court:

> [t]he attorney–client privilege is the oldest of the privileges for confidential communications known to the common law.  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (internal citation omitted); *see also* American Bar Association Model Rules, Rule 1.6 "Confidentiality of Information" (discussing counsel's responsibility to protect confidential information shared by client).  Finally, and importantly, Plaintiffs Pfeifer and Dorley turned over ESOP information to counsel *in the interest of the Class*.  The issues in this lawsuit concern all of the Class members and their losses

---

[5] In the case of Pfeifer, there is no fully executed confidentiality agreement.  Bowers Declaration, Exhibit 13 (Pfeifer Deposition at 32:6–8).

as a result of the September 2015 forced sale.  By producing documents to counsel, Plaintiffs

ensured that Class members would have their rights protected under ERISA.  Plaintiffs'

production of the documents is directly aligned with the interests of the Class—any alleged

breach of the Wawa confidentiality agreement does not create a "fundamental conflict" between

Plaintiffs and the Class.  Rather, it demonstrates Plaintiffs' vigorous representation of the Class's

interests.  Defendants cannot demonstrate any fundamental conflict between Plaintiffs and the

Class; accordingly, Plaintiffs satisfy the first requirement of an adequate representative.

Lastly, Plaintiffs must have the "ability and the incentive to represent the claims of the

class vigorously…."  *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988) (citing *Gen. Tel. Co. of

Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).  Both Plaintiffs,[6] Pfeifer and Dorley, have been

actively engaged in the litigation since its inception.  They have provided documents to counsel

used to draft the complaint and amended complaint.  They have both participated in discovery,

including giving depositions for the purpose of class certification.  Both Pfeifer and Dorley are

motivated to pursue the claims on behalf of the Class, as they both were subjected to the forced

---

[6] Another individual, Michael DiLoreto, is a representative of the Class.  There is no
requirement that a class representative be a named plaintiff.  "Courts have generally permitted
the addition or substitution of class representatives when there is no showing of prejudice to
defendants and such addition or substitution would advance the purposes served by class
certification." *In re Arakis Energy Corp. Sec. Litig.*, No. 95-cv-3431 (ARR), 1999 WL 1021819,
at *13 (E.D.N.Y. Apr. 27, 1999).  There is no requirement under Rule 23 that a class
representative have "sued individually" or have sought to intervene as a plaintiff; rather, a "class
member can be passive" and substituted "when, and if, required." *In re Telectronics Pacing Sys,
Inc.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997); Manual for Complex Litigation § 21.26 ("The Court
may permit intervention by a new representative or may simply designate that person as a
representative in the order granting class certification.").  Michael DiLoreto is also well-suited to
be an adequate class representative, as he has no intra-class conflicts and is similarly motivated
to vigorously represent the interests of the Class. At Defendants' request, Mr. DiLoreto's
deposition has been scheduled after the due date of this motion, but prior to Defendants'
opposition.

sale of their Wawa stock for less than fair market value. Therefore, Plaintiffs meet the adequacy requirement of Rule 23(a)(4).

                    b.       *Counsel Meets the Requirements of Rule 23(a)(4) & 23(g)*

    "Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4), those questions have, since 2003, been governed by Rule 23(g)." *Sheinberg v. Sorenson*, 606 F.3d 130, 132 (3d Cir. 2010). Rule 23(g) lays out factors such as (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g). Defendants do not dispute that Plaintiffs' counsel are qualified to represent the Class. *See* Stipulation ¶ 6. Even if it were disputed, counsel in this case easily satisfy these requirements.

    Dan Feinberg is a partner with Feinberg, Jackson, Worthman & Wasow LLP. He has specialized in employee benefits law since 1988. Declaration of Daniel Feinberg ("Feinberg Declaration") ¶ 8. He has been named a "Northern California Super Lawyer" for the last twelve years and a Top 100 Lawyer by Northern California Super Lawyers for the last six years. *Id.* He taught a course entitled "Employee Benefits Law" at Berkeley Law for the spring semester in 2012. *Id.* He has served as class counsel or co-counsel in numerous ERISA class actions, including ESOP class actions such as *Neil v. Zell*, 275 F.R.D. 256 (N.D. Ill. 2011) (Tribune ESOP litigation), as listed in his declaration. Feinberg Declaration ¶ 4.

    Courts in this Circuit, as well as others, have repeatedly recognized Cohen Milstein as "a firm experienced in class action litigation" and appointed the firm or its lawyers "to represent the interests of the class" in a variety of litigation. *E.g., Garcia v. Intelligroup, Inc.,* No. CIV A 04-

4980 JCL, 2005 WL 6074922, at *4 (D.N.J. Aug. 10, 2005) (securities litigation); *In re Philips/Magnavox Television Litig*., No. CIV.A. 09-3072 CCC, 2012 WL 1677244, at *6 (D.N.J. May 14, 2012).  This Court itself observed that Cohen Milstein, along with its Co-Lead counsel had "vigorously and capably prosecuted [an] extremely demanding litigation." *In re OSB Antitrust Litig*., No. 06-826, 2007 WL 2253418, at *4 (E.D. Pa. Aug. 3, 2007).  As shown in the Firm's resume, Cohen Milstein has been recognized as one of the leading plaintiffs' and class action law firms in the United States and has served as sole lead counsel, co-lead counsel in numerous class actions for 46 years.  Declaration of Joseph Barton ("Barton Declaration"), Exhibit 1.  In another ERISA case in which Cohen Milstein was one of the lead class counsel and Joseph Barton was one of the counsel, another court in this District observed that "class counsel possess[ed] ample qualifications and experience to pursue Plaintiffs' ERISA class action claims" and had "vigorously prosecuted this case." *Mehling v. N.Y. Life Ins. Co.,* 246 F.R.D. 467, 475 (E.D. Pa. 2007) (finding counsel qualified under Rule 23(a)(4)).  Joseph Barton, the partner at Cohen Milstein overseeing this case, has more than 15 years of experience litigating a wide variety of class action and non-class complex cases including employee benefit litigation. Barton Declaration ¶ 5.  He has served as lead trial counsel in several ERISA cases, including *Chesemore v. Alliance Holdings, Inc.*, No. 3:09-cv-00413 (W.D. Wis.) (ESOP litigation resulting in more than $17 million recovery for the class) and *Severstal Wheeling Inc. Retirement Committee v. WPN Corporation*, No. 10 Civ. 954 (LTS) (GWG) (S.D.N.Y.) (judgment of more than $15 million for plaintiffs).  Barton Declaration ¶¶ 6–8.

Richard Donahoo is a partner with Donahoo & Associates, P.C.  Declaration of Richard Donahoo ("Donahoo Declaration") ¶ 1.  He has practiced since 1996 and specializes in complex matters.  *Id*. at ¶¶ 3–4.  He has served as lead counsel in a number of class and collective action

cases on behalf of employees, as listed in his declaration.  *Id*. at ¶ 4.  He was named Trial Lawyer

of the Year by the Orange County Trial Lawyers Association in 2015.  *Id*. at ¶ 9.

      Not only do these attorneys and firms have extensive experience litigating both ERISA

class actions, including numerous ESOP cases, they worked diligently to litigate the claims in the

Amended Complaint.  Feinberg Declaration ¶ 12; Barton Declaration ¶ 13; Donahoo Declaration

¶ 11**.**  There should be no question that counsel have sufficient resources to litigate this class

actions.  Barton Declaration ¶ 13; Feinberg Declaration ¶ 13; Donahoo Declaration ¶ 12.

Plaintiffs' counsel easily satisfy the adequacy requirement Rule 23(a)(4) and the factors of Rule

23(g).

      C.    <u>The Claims Meet the Requirements of Rule 23(b)</u>

      To certify a class action, the action must meet the requirements of Rule 23(a) and at least

one of the three provisions of Rule 23(b).  Here, Plaintiffs move for class certification under

23(b)(1) and (b)(2); or, alternatively, under 23(b)(3) if the Court finds that the case is not

appropriate for certification under (b)(1) and (b)(2).

      1.    <u>The Requirements of Rule 23(b)(1) Are Met</u>

      Federal Rules of Civil Procedure 23(b)(1) provides for class certification if "prosecuting

separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that
> would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter,
> would be dispositive of the interests of the other members not parties to the individual
> adjudications or would substantially impair or impede their ability to protect their
> interests."

Fed. R. Civ. P. 23(b)(1).  "[B]ecause of the unique and representative nature of an ERISA §

502(a)(2) suit, numerous courts have held class certification proper pursuant to Rule

23(b)(1)(B)."  *Stanford*, 263 F.R.D. at 174.  In fact, certification under Rule 23(b)(1) is typical in

ERISA cases. *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) ("Most ERISA class actions are certified under Rule 23(b)(1)"); *Feret v. Corestates Financial Corp.*, 1998 WL 512933, at *13 (E.D. Pa. Aug. 18, 1998) ("Certifications under both of these clauses [(b)(1)(A) and (b)(1)(B)] are common in labor relations cases because defendants often provide 'unitary treatment to all members of [a] putative class [in this] . . . area' and thus the rights of absent class member[s] [are often] . . . implicated by litigation brought by other class members.") (citation omitted). Class certification in this case is appropriate under either Rule 23(b)(1)(A) or (b)(1)(B).

> a.   *Class certification under Rule 23(b)(1)(A) is appropriate.*

Certification under Rule 23(b)(1)(A) applies in "cases where the party is obliged by law to treat the members of the class alike […], or where the party must treat all alike as a matter of practical necessity[.]" *Amchem*, 521 U.S. at 614; *see* Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment (explaining that the clause should be used to achieve a "unitary adjudication: when an individual seeks a determination concerning particular rights or duties which affect other individuals.").

First, certification under (b)(1)(A) is typical in ERISA actions because ERISA "requires plan administrators to treat all similarly situated participants in a consistent manner." *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008). Certification pursuant to Rule 23(b)(1)(A) is "especially helpful in ERISA cases where a defendant provides unitary treatment to all members of a putative class and where litigation of some class members' rights could be implicated in suits brought by other class members." *Cottillion*, 2013 WL 5936368, at * 6 (citing *Thomas*, 201 F.R.D. at 396–97). Here, the Terminated Employee Participants were all subjected to the same forced sale by Defendants. The Court's decision on Plaintiffs' claims that the Plan Amendment was invalid and that their Wawa stock was sold for less than fair market

value will have the same answer for all Terminated Employee Participants. Separate lawsuits regarding the applicability of the 2015 Plan Amendment and the fair market value of Wawa stock could result in conflicting adjudications, making uniform administration of the Plan impossible for Defendants. Accordingly, certification of the Class under (b)(1)(A) is necessary.

Additionally, the claims alleged by Plaintiffs in this action are typical of ERISA claims certified under (b)(1)(A). First, Plaintiffs have alleged breaches of fiduciary duties by Defendants, claims which are typically certified under (b)(1)(A). *Schering Plough Corp.*, 589 F.3d at 604 ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.") Plaintiffs' claims that the valuation of Wawa stock was improper are also appropriate for certification under (b)(1)(A), as the same share price will apply to all Terminated Employee Participants. *See Savani*, 2012 WL 3757239, at *4 (D.S.C. Aug. 28, 2012) (noting that "ERISA cases where plaintiffs challenge the computation of benefits are often certified under Rule 23(b)(1)(A)"). Claims challenging a plan amendment, such as Plaintiffs' unilateral contract claim, anti-cutback claim, and misrepresentation claims, are also properly certified under Rule 23(b)(1)(A) because "challeng[ing] the legality under ERISA of [a] pension plan amendment . . . epitomizes [the] phrase 'incompatible standards of conduct'" because "differing outcomes [of such a claim] would make it impossible for defendants to implement any one result because of the inherent conflict from disparate adjudications." *Pender*, 269 F.R.D. at 598.

Finally, the relief sought by Plaintiffs weighs in favor of certification under (b)(1)(A). Plaintiffs seek broad injunctive relief as to Defendants' conduct and the terms of the Plan, including invalidation of the 2015 Plan Amendment, declaratory relief, and other equitable relief.

The requested relief, if granted in some actions but denied in others, could make compliance impossible for defendants.  *See Thomas*, 201 F.R.D. at 397 (citing *Ikon*, 191 F.R.D. at 466; *Bunnion*, 1998 WL 372644, at *13).  Plaintiffs' claims are brought on behalf of the Plan.  This creates the risk of incompatible orders if this Court were to reach a conclusion on a plan-wide claim and another court reached a conflicting decision on an individual claim.  *See Stanford*, 263 F.R.D. at 173 (discussing how the risk of inconsistent orders between a plan-wide claim and a claim brought on behalf of an individual account could create "unworkable standards," and finding that the class satisfied (b)(1)(A) on that basis).  In light of the foregoing, certification is warranted under Rule 23(b)(1)(A).

> b.   *Class certification under Rule 23(b)(1)(B) is appropriate.*

Certification under Rule 23(b)(1)(B) is appropriate in actions where if the action was litigated individually instead of as a class, it "would have the practical if not technical effect of" concluding or impairing the interests of persons who are not parties to the lawsuit.  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999).  An example of an action suited for certification under this provision is "the adjudication of the rights of all participants in a fund in which the participants have common rights."  *Id.* at 834 n.14.  Indeed, Rule 23(b)(1)(B) is applicable in "an action which charges a breach of trust by a[ ] ... trustee or other fiduciary similarly affecting the members of a large class of security holders or their beneficiaries, and which requires an accounting or like measures to restore the subject of the trust," which is the type of action asserted here.  Fed. R. Civ. P. 23, advisory committee's note to 1966 amendment.

The claims brought in this action are similarly suitable for class certification under (b)(1)(B).  Plaintiffs' claims pertain to Defendants' conduct in adopting and carrying out the 2015 Plan Amendment.  Adjudications of these claims would "require a court to evaluate defendants' conduct, which was uniform with respect to each plaintiff, and to interpret certain

provisions of the plan in which all plaintiffs participated . . . there is a very real danger that an adjudication in which one plaintiff participated would affect others plaintiffs' ability to protect their own interests." *Sessions v. Owens-Illinois, Inc*., 267 F.R.D. 171, 179 (M.D. Pa. 2010) (certifying ERISA § 502(a)(1)(B) claims under Rule 23(b)(1)(B)).

Plaintiffs' claims affect the interests of all Terminated Employee Participants not parties to the suit.  For example, Plaintiffs have alleged breaches of fiduciary duties by Defendants with respect to misrepresentations about the Amendment, improper valuation of Wawa stock, and failure to monitor other fiduciaries.  Any findings as to the alleged breaches will affect the interests of Plan participants not parties to the suit.  *See Thomas*, 201 F.R.D. at 397 (certifying class under (b)(1)(B) because "plaintiffs claim that the defendants have breached their fiduciary duties under ERISA," and "[a]ny decision regarding whether the defendants breached their fiduciary duties would necessarily affect the interests of other participants"); *Ikon*, 191 F.R.D. at 466 (certifying a class under 23(b)(1) because "given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief"); *Kane v. United Indep. Union Welfare Fund*, 1998 WL 78985, at *9 (E.D. Pa. Feb. 23, 1998) (certifying an ERISA class action pursuant to 23(b)(1)(B) because an action brought to remedy breaches of fiduciary duty affects all plan participants).  Thus, claims alleging fiduciary violations arising from the improper valuation of ESOP stock are often certified under Rule 23(b)(1)(B).  *See, e.g.*, *Neil v. Zell*, 275 F.R.D. 256, 268 (N.D. Ill. 2011).

Defendants contest the certification of the misrepresentation claims under (b)(1).  Bowers Declaration, Exhibit 9 (Defs.' Resp. to Plaintiffs' Amended Second Set of Interrogatories, No. 5).  They state that the outcome of the misrepresentation claim as to one participant is not controlling as to the misrepresentation claim of another participant.  However, Defendants'

33

misrepresentations were made uniformly with respect to the entire Class.  The misleading statements were made in the SPDs and other class-wide communications.  Whether the statements were misleading in light of the 2015 Plan Amendment is determined on the basis of a reasonable employee; it is not an individual determination as to each participant.  *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993) ("a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire").  If the statements are found misleading as to a reasonable employee, this finding will control as to all participants and Class members.  Accordingly, the misrepresentation claims are suited for certification under Rule (b)(1).

Plaintiffs' remaining claims concern the legality of the 2015 Plan Amendment—whether the Amendment cut back the Class members' benefits, whether the Plan terms in effect at the time the Class members left employment should govern their benefits, and whether Section 10.6 of the Plan document attempts to relieve fiduciaries of liability for any breach.  In these claims, the same conduct by Defendants applies to each participant, and there are no unique facts or individual relationships at issue.  *See Schering Plough Corp.*, 589 F.3d at 604 (explaining that the class was properly certified under (b)(1)(B) because the plaintiff's claims were based on defendants' conduct).  Adjudications on each of these claims would be dispositive of the claims of other class members that were not parties to the suit, because the Plan administrator must interpret and apply the Plan in accordance with its terms consistently to all similarly situated participants.  Accordingly, this action is suited for certification under Rule (b)(1)(B).

### 2. The Requirements of Rule 23(b)(2) Are Also Met

Class certification under Rule 23(b)(2) is appropriate when (1) "the party opposing the class has acted or refused to act on grounds that apply generally to the class" and (2) "final

injunctive relief or declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ.

P. 23(b)(2).

> a. *Defendants Have Acted or Refused to Act As to the Class As a Whole*

"Courts routinely have certified classes pursuant to this sub-section [Rule 23(b)(2)]

where, as in the instant case, an ERISA plan administrator makes a uniform decision about

administering the Plan as it applies to the putative class members." *Cottillion*, 2013 WL

5936368, at *6 (W.D. Pa. Nov. 5, 2013). Here, Defendants have acted on grounds generally

applicable to the class. The 2015 Plan Amendment was applied uniformly to all Terminated

Employee Participants; therefore, Count VI seeks classwide injunctive relief, such as rescission.

This same analysis applies to Counts IV and VII alleging that Defendants breached their

fiduciary duties with respect to the disclosures made to Plaintiffs and the Class. In an analogous

case where plaintiffs alleged similar claims under ERISA §§ 102 and 404, the Second Circuit

concluded that such claims were suitable for certification under Rule 23(b)(2). *Amara v. CIGNA

Corp.*, 775 F.3d 510, 530 (2d Cir. 2014). In *Amara*, defendants' disclosures—in two SPDs and

other written materials—were uniform and were provided to the entire class and were essential in

informing employees of their rights under the pension plans. *Id.* at 530–31. Likewise, here, the

disclosures at issue were contained in the SPDs (as well as other standard communications sent

to the entire class). Bowers Declaration, Exhibit 1 (Peterson Deposition at 72:11–75:7). The

critical language was identical or virtually identical in every single SPD produced by Defendants

in this litigation. Bowers Declaration, Exhibits 2, 3, 4, & 5 (2004 SPD at 8–9, 14; 2006 SPD at

9, 16; 2011 SPD at 9, 15; 2014 SPD at 12, 17); Exhibit 1 (Peterson Deposition at 72:11–75:7),

Exhibit 14 (Defs.' Supp. Responses to Pls.' First RFA, No. 2); *see also* Pfeifer Declaration,

Exhibit 2 (2002 SPD at 9, 10).  As the focus under Rule 23(b)(2) is on whether Defendants' conduct was uniform as to the class, the first criterion of Rule 23(b)(2) is satisfied.

          b.     *The Complaint Primarily Seeks Declaratory and Injunctive Relief*

Rule 23(b)(2) applies to cases that seek "injunctive or declaratory relief" for the class. *Dukes*, 564 U.S. at 360–61 ("The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted'" such as "conduct that was remedied by a single classwide order.")  Certification under Rule 23(b)(2) is appropriate "when a single injunction or declaratory judgment would provide the relief to each member of the class."  *Id*. at 360.  In an ERISA case involving whether the plan had properly paid benefits, the Seventh Circuit concluded: "What is sought is a declaration that [the Plan's] method of computing [benefits] is unlawful.  That is a ground common to all the members of the class."  *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 763 (7th Cir. 2003) (affirming Rule 23(b)(2) certification for an ERISA § 502(a)(1)(B) claim).  Here, a declaration and an order requiring that class members' benefits be calculated under the terms of the Plan without the 2015 Plan Amendment would resolve the claims for all members of the Classes.

ERISA § 502(a)(3) permits a participant to obtain either an injunction, a declaration or "other appropriate equitable relief" to redress violations or to enforce ERISA or the terms of the plan.  *Amara*, 563 U.S. at 441–42 (concluding "injunctions requir[ing] the plan administrator to pay to already retired beneficiaries money owed them under the plan as reformed" was appropriate equitable relief); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 26-27 (1983) ("Under § 502(a)(3)(B) of ERISA, a participant … may bring a declaratory judgment action in federal court").  The mere fact that the claim results in monetary relief does not mean that the relief sought is not equitable.  *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 131–33 (3d Cir. 1998) (discussing the difference between a claim

that seeks monetary relief and a claim for equitable relief from which monetary relief followed

(in this case, a fund for medical examinations to detect smoking related diseases), and certifying

the class under Rule 23(b)(2).

Rule 23(b)(2) is satisfied even where a declaratory judgment is "merely a prelude to a

request for [monetary relief]." *Berger*, 338 F.3d at 763.  Re-affirming the validity of this

rationale after *Dukes*, the Seventh Circuit concluded an ERISA case was properly certified under

23(b)(2):

> [A] declaration of the rights that the plan confers and an injunction ordering
> [defendant] to conform the text of the plan to the declaration. If once that is done
> the award of monetary relief will just be a matter of laying each class member's
> [plan] records alongside the text of the reformed plan and computing the
> employee's entitlement by subtracting the benefit already credited it to him from
> the benefit to which the reformed plan document entitles him, the monetary relief
> will truly be merely "incidental" to the declaratory and (if necessary) injunctive
> relief (necessary only if [defendant] ignores the declaration).

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 371 (7th Cir. 2012); *see  Amara*,

775 F.3d at 523 (affirming Rule 23(b)(2) certification because "[w]hen the plan is reformed . . .

monetary benefits flow as a necessary consequence of that injunction").  The primary relief

sought by Counts IV, V, VI, and VII is a declaration invalidating the 2015 Plan Amendment.

Am. Compl. Prayer for Relief ¶¶ A–O.  In fact, all of the relief sought—including any monetary

relief—is obtained by issuance of an injunction or declaration.

For example, the remedy of rescission is accomplished by issuing a declaration.  Dan B.

Dobbs, *The Law of Remedies* § 4.3(6) at 415 (2d ed. 1993) ("In equity rescission… the rescission

does not take place until the court *declares* it.") (emphasis added); *Black's Law Dictionary*, 1308

(7th ed. 1999) ("[E]quitable rescission" is "decreed by a court of equity").  Similarly, a

constructive trust is obtained when the court "*declares* [the defendant] to be [the] constructive

trustee, [and] then orders him as trustee to make a transfer of the property to the beneficiary of

the constructive trust, the plaintiff."  Dan B. Dobbs, *supra* § 4.3(2) at 393 (emphasis added);

George G. Bogert, et al., *The Law Of Trusts And Trustees* § 471 (2008) (explaining that a constructive trust is accomplished "by merely issuing a decree that the defendant convey" property to the plaintiff). Finally, "[n]othing is more clearly a part of the subject matter of a suit for an injunction than the recovery of that which has been illegally acquired and which has given rise to the necessity for injunctive relief." *Porter v. Warner Holding Co.,* 328 U.S. 395, 399 (1946) (concluding order for return of illegal rents is injunctive relief); *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 250–53 (2000) (explaining requiring the return of monies wrongfully transferred is done by an injunction). As a result, courts have characterized disgorgement as "a continuing injunction." *S.E.C. v. AMX, Int'l,* 7 F.3d 71, 76 n.8 (5th Cir. 1993). As payment of money in this suit would be the automatic consequence of the declaratory and injunctive relief, these claims are ideally suited for certification under Rule 23(b)(2).

### 3. The Requirements of Rule 23(b)(3) Are Also Met

Certification under Rule 23(b)(3) is appropriate if (1) common questions predominate over any questions affecting only individual members, and (2) class resolution is superior to other available methods for the fair and efficient adjudication of claims. Fed. R. Civ. P. 23(b)(3). But an action should be certified under Rule 23(b)(3) only if the court concludes that the requirements of Rule 23(b)(1) or (2) are not met. *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) ("[A]n action maintainable under both (b)(2) and (b)(3) should be treated under (b)(2) to enjoy its superior res judicata effect and to eliminate the procedural complications of (b)(3), which serve no useful purpose under (b)(2)."); *Stanford*, 236 F.R.D. at 174 ("[W]here certification is proper under Rule 23(b)(1) and (b)(3), courts should, and generally do, certify the class pursuant to Rule 23(b)(1)"); *Mehling*, 246 F.R.D. at 475 n.6 ("[A] class that can be certified pursuant to Rules 23(b)(1) and (b)(2) should not be treated as a 23(b)(3) class action."). If the

Court finds that certification is not proper under Rule 23(b)(1) or (b)(2), the Court should certify the class under 23(b)(3).

        a.     *Common Issues Predominate Over Individual Ones*

The predominance requirement tests whether the class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "A predominance of common questions does not require unanimity of common questions. Rather, it requires that common questions outweigh individual questions." *LaFata v. Raytheon Co.*, 207 F.R.D. 35, 42 (E.D. Pa. 2002) (citing *Johnston v. HBO Film Mgmt., Inc*., 265 F.3d 178, 185 (3d Cir. 2001)); *Newton*, 259 F.3d at 187. Predominance examines "*each cause of action* independently of one another, not the entire lawsuit." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003) (citing the 1st, 2nd, 5th, 6th and 11th Circuits). Courts in the Third Circuit frequently "have found that common issues predominate over individual ones in the context of ERISA claims." *LaFata*, 207 F.R.D. at 44 (finding that common questions of fact and law predominate over individual questions for the ERISA claims); *Stanford*, 263 F.R.D. at 174 n. 22 (noting that the class was certifiable under Rule 23(b)(1), but that the class also met the predominance test and could also be certified under Rule 23(b)(3)); *Brooks v. Educators Mut. Life Ins. Co*., 206 F.R.D. 96 (E.D. Pa. 2002) (finding predominance satisfied based on allegations of a "common scheme" to pay anesthesia bills in a manner contrary to the company's written policies); *Gilman v. Independence Blue Cross*, 1997 WL 633568, at *6 (E.D. Pa. Oct. 6, 1997) (finding predominance satisfied because the legal and factual questions were common to the entire class and predominated over individual issues).

        (1)     Common Issues Predominate for Counts I, II, III, V, VI, VIII, and IX

Common issues predominate with respect to Counts V and VI, the anti-cutback claim and the unilateral contract claim. Both concern the 2015 Plan Amendment and whether it was valid. The conduct by Defendants—forcing liquidation of Wawa stock for all Terminated Employee Participants and distribution of their ESOP accounts—was identical with respect to each Class member. The common predominating issues here are whether the Class members' benefits were reduced by the Plan Amendment and whether the terms of the Plan in effect at the time of the class members' retirement governs. These issues will be decided under principles of contract law and under the terms of the Plan and Plan Amendment. All questions pertaining to the legality of the 2015 Plan Amendment not only predominate, but are identical for all class members. Thus, common issues predominate as to these two counts (Counts V and VI).

The predominance requirement is also met for the claim that Defendants violated ERISA § 410. The claim alleges that Section 10.6 of the Wawa ESOP, to the extent that it attempts to relieve Defendants of their responsibility or liability to discharge their fiduciary duties, is void. Like the anti-cutback and unilateral contract claim, this claim turns on the interpretation of the Plan and whether it violates ERISA § 410 and is identical as to every class member. No individualized issues arise, and common issues predominate for this claim (Count IX). Additionally, the duty to monitor claim (Count VIII) raises the same issues for every class member and satisfies the predominance requirement.

For Plaintiffs' valuation claims (Counts I, II and III), the conduct by Defendants was the same as to each Class member. Each member shares the same issues—whether the price per share paid by Defendants in the forced sale was proper, and whether Defendants reasonably investigated the fair market value prior to the sale. Moreover, although each class member may be entitled to a different amount of recovery to their accounts, individual calculations of damages

40

does not defeat class certification under (b)(3). *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016). No individual issues arise under the valuation claims, and thus the predominance requirement is satisfied.

(2)     Common Issues Predominate for Counts IV and VII

Plaintiffs' misrepresentation claims also satisfy the predominance component of (b)(3). The misrepresentations were made in SPDs and other communications that were sent to the entire class. Plaintiffs need not show individualized reliance by class members on the class-wide misrepresentations; that view of the law has been foreclosed by *Amara*. *Amara*, 563 U.S. at 443–44; *see also Osberg v. Footlocker*, Case No. 1:07-cv-1358, 2014 WL 5796686 at *4 (S.D.N.Y. Sept. 24, 2014) (stating that defendants' argument that individual reliance on alleged misrepresentation prohibited certification of the claim under (b)(3) was foreclosed by *Amara*).

In *Footlocker*, the court discussed reliance on class-wide misrepresentations at both the liability and remedy stage. With respect to liability, the *Footlocker* court explained that defendants' conduct was uniform as to all the putative class members and liability could reasonably be based on an assessment of the common, class-wide materials. *Footlocker*, 2014 WL 5796686 at *4. As in *Footlocker*, the misrepresentations at issue in this case were contained in class-wide communications. Reliance can be assessed through the communications themselves, not individually as to each class member. Accordingly, at the liability stage, reliance does not present unique issues that defeat class certification. The same follows for the remedy phase—reliance is not required. *Footlocker*, 2014 WL 5796686, at *5 (citing *Amara*, 563 U.S. at 443). In *Amara*, the Supreme Court explained that a showing of 'detrimental reliance' is not necessary before declaring a remedy. *Amara*, 563 U.S. at 443. Reliance is not required for reformation of contract or reinstatement, the remedies requested here. *See id; see also Footlocker*, 2014 WL 5796686 at *5. Since the issue as to whether the statements made in class-

41

wide communications were misleading predominates over individual issues, the predominance requirement of (b)(3) is satisfied.

        b.     *The Superiority Requirement is Met*

Superiority merely measures whether "a class action is superior to other available methods for the fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A class action device is a superior method of adjudication if it will: (1) prevent a multiplicity of suits that would waste judicial resources; (2) avoid the risk of inconsistent judgments; and (3) enable plaintiffs with small claims to get to court. *LaFata*, 207 F.R.D. at 44. Among the factors to consider are the following:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). As Plaintiffs' case rises and falls with common evidence, a class action is a superior method of proceeding.

First, the size of class members' recovery is likely to be too small for an individual to have an interest in controlling his own lawsuit. From Wawa's produced list of divested participants, the average number of shares per divested participant was about eleven. Bowers Declaration ¶ 17. The difference between the amount paid during the forced sale and the amount to be gained by either reinstatement or by a change in valuation for eleven shares likely is not large enough for each member to have an interest in bringing their own action. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) (finding that a class action met the superiority requirement because each individual had a very small claim in relation to the cost of prosecuting a lawsuit). Nor does the potential existence of statutory fees weigh in favor of participants bringing individual actions. *Chakejian v. Equifax Information Servs. LLC*, 256

42

F.R.D. 492, 501 (E.D. Pa. 2009).  Second, there is no other litigation. *Warfarin Sodium*, 391 F.3d at 534 (noting that only a few individual lawsuits had been filed, which weighed in favor of the superiority of a class action).   Third, concentrating the claims in this District is desirable as Wawa is headquartered here, the individual defendants are located here as are many class members, including the named plaintiffs.  *Id*.  Finally, as all of the issues are common, and the Complaint seeks injunctive and declaratory relief, there are no manageability issues sufficient to defeat certification.  Even so, it is "well-settled" that courts should not refuse to certify a class merely based on manageability concerns. *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 663 (7th Cir. 2015) (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.) (explaining that failure to certify a class solely on manageability grounds is disfavored given the management tools available)).

## IV.    CONCLUSION

For the foregoing reasons, these ERISA claims are well-suited to class certification and Plaintiffs' motion for class certification under Fed. R. Civ. P. 23(a), (b)(1) and (b)(2), or alternatively (b)(3) should be granted.

Dated:  December 14, 2016

Respectfully submitted,

s/ Jamie Bowers_____
R. Joseph Barton (*pro hac vice*)
Jamie Bowers (*pro hac vice*)
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Tel:  (202) 408-4600
Fax: (202) 408-4699
Email: jbarton@cohenmilstein.com

Raymond M. Sarola (PA Bar No. 318164)
Gary L. Azorsky (PA Bar No. 38924)
COHEN MILSTEIN SELLERS
& TOLL PLLC
3 Logan Square, 1717 Arch Street
Philadelphia, PA 19103
Tel:  (267) 479 5700
Fax: (267) 479-5701
Email:  rsarola@cohenmilstein.com
Email:  gazorsky@cohenmilstein.com

Daniel Feinberg *(pro hac vice)*
**FEINBERG, JACKSON, WORTHMAN
& WASOW LLP**
383 4th Street, Suite 201
Oakland, CA 94607
Tel:  (510) 269-7998
Fax: (510) 269-7994
Email: dan@feinbergjackson.com

Richard E. Donahoo, (*pro hac vice*)
**DONAHOO & ASSOCIATES, P.C.**
440 W. First Street, Suite 101
Tustin, California 92780
Tel:  (714) 953-1010
Fax: (714) 953-1777
Email:  rdonahoo@donahoo.com

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I caused a true and correct copy of the foregoing **PLAINTIFFS'**

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**, to be

served on the counsel listed below via the Court's ECF system on December 14, 2016:

**Brian T. Ortelere**
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
215-963-5150

**Andrew Napier**
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
215-963-5610

**David I. Monteiro**
Morgan Lewis & Bockius LLP
1717 Main Street
Suite 3200
Dallas, TX 75201
214-466-4000

**Jeremy P. Blumenfeld**
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
215-963-5258

/s/ Jamie Bowers
Jamie Bowers