**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GREG PFEIFER, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **Civ. No. 16-497** |
| | : | |
| **WAWA, INC., et al.,** | : | |
| **Defendants.** | : | |

## O R D E R

On February 1, 2016, Plaintiffs Greg Pfeifer and Andrew Dorley brought this ERISA class action against Defendants Wawa, Inc., Retirement Plans Committee of Wawa, Inc., Richard D. Wood, Jr., Howard B. Stoeckel, Jared G. Culotta, Michael J. Eckhardt, James Morey, Catherine Pulos, Dorothy Swartz, Kevin Wiggins, and Wawa, Inc. Employee Stock Ownership Plan, challenging an amendment to Defendant Wawa, Inc.'s ESOP that eliminated their right to hold Wawa stock through age 68 and forced them to sell their shares at a purportedly unfair price. On May 1, 2018, I, *inter alia*, conditionally certified a Settlement Class and preliminarily approved the Parties' Settlement Agreement. Plaintiffs now ask me finally to certify the Settlement Class, grant final approval of the Settlement Agreement, and approve an award of attorneys' fees and incentive awards. (Doc. Nos. 121, 126, 131.) Because I conclude that: (1) the Settlement Class meets the requirements of Rule 23(a) and 23(b)(1) and (2); (2) the Notice was sufficient; (3) the terms of the Settlement are fair, reasonable, and adequate; and (4) the requested costs, fees, and awards are reasonable, I will grant Plaintiffs' Motions.

## I.        BACKGROUND

The Wawa Employee Stock Ownership Plan is an ERISA-qualified employee benefit plan sponsored by Defendant Wawa, and the ESOP's primary asset is Wawa equity. (Am. Compl. ¶¶ 13, 26, Doc. No. 20; Ans. ¶¶ 13, 26, Doc. No. 62.) The Retirement Plans Committee

administers the ESOP.  (Am. Compl. ¶ 14; Ans. ¶ 14.)  Defendants Culotta, Eckhardt, Morey, Pulos, Swartz, and Wiggins are members of the Committee and officers of Wawa.  (Am. Compl. ¶¶ 15–20; Ans. ¶¶ 15–20.)  Defendants Wood and Stoeckel are the trustees of the ESOP.  (Am. Compl. ¶¶ 22–23; Ans. ¶¶ 22–23.)

The ESOP initially permitted all Wawa's retired and terminated employees, including those terminated for cause, to continue to hold Wawa stock through the ESOP.  (See Bowers Decl. Ex. 1 (Peterson Decl.) at 120:21–121:8, Doc. No. 77-3.)  As required by ERISA, Wawa periodically issued Summary Plan Descriptions of the ESOP terms.  (Am. Compl. ¶ 33; Ans. ¶ 33; Bowers Decl. Ex. 1 at 70:18–25, Doc. No. 77-3); 29 U.S.C. § 1022(a).  Each SPD provided that vested benefits are "paid in the same form and manner as retirement benefits," and that "no amendment to the Plan will reduce the benefit you have already earned, or divest you of any entitlement to a benefit."  (Bowers Decl. Ex. 2 at 8–9, 14, Doc. No. 77-4; Bowers Decl. Ex. 3 at 9, 16, Doc. No. 77-5; Bowers Decl. Ex. 4 at 9, 15, Doc. No. 77-6; Bowers Decl. Ex. 5 at 12, 17, Doc. No. 77-7.)  They also provided that "if the total value of your benefit is more than $5,000, you may elect to delay payment until you reach age 68."  (Bowers Decl. Ex. 4 at 9, Doc. No. 77-6; Bowers Decl. Ex. 5 at 12, Doc. No. 77-7; see also Bowers Decl. Ex. 2 at 8–9, Doc. No. 77-4; Bowers Decl. Ex. 3 at 9, Doc. No. 77-5 (until 2011, former employees could hold Wawa stock until age 70½).)

On August 7, 2015, Wawa amended the ESOP, eliminating "terminated participants'" rights to hold Wawa stock through age 68.  (Bowers Decl. Ex. 10, Doc. No. 77-12.)  On August 10, Wood and Stoeckel sent a letter to all terminated employees informing them that Wawa had adopted the ESOP Amendment.  (See Pfeifer Decl. Ex. 3, Doc. No. 77-20.)  On September 11, 2015, Defendants effectuated the ESOP Amendment.  (Bowers Decl. Ex. 7 at 35, Doc. No. 77-

2

9.)  Terminated participants were forced to pay a $50.00 distribution fee and received $6,940 per share of Wawa stock.  (See Pfeifer Decl. Ex. 3 at 3, Doc. No. 77-20; Ans. ¶ 63, Doc. No. 62.)

Plaintiffs Greg Pfeifer and Andrew Dorley—two terminated employee ESOP participants—were divested of their Wawa stock as a result of the Plan Amendment.  Pfeifer was an employee of Wawa from 1992 to 2009, and a participant in the ESOP from 1992 until the Amendment's adoption.  (Pfeifer Decl. ¶¶ 2, 3, Doc. No. 77-17.)  Dorley was an employee of Wawa from 1994 to 2007, and a participant in the ESOP from 1994 until the Amendment's adoption.  (Dorley Decl. ¶¶ 2, 6, Doc. No. 77-22.)  Proposed class representative Michael DiLoreto, who is not a named Plaintiff, was an employee of Wawa from 1998 to 2008, and a participant in the ESOP from 1998 until the Amendment's adoption.  (DiLoreto Decl. ¶¶ 2, 3, Doc. No. 77-24.)

Plaintiffs pled the following claims in their Amended Complaint:

- Count I: The Trustee and Committee Defendants breached their fiduciary duties by authorizing the ESOP's sale of Wawa stock at a price below fair market value.  (Am. Compl. ¶¶ 95–105, Doc. No. 20); ERISA § 404(a)(1)(A), (B), (D), 29 U.S.C. § 1104(a)(1)(A), (B), (D).

- Count II: The Trustee Defendants and Wawa unlawfully caused the Plan to engage in a related party transaction (the sale of Wawa stock) for inadequate consideration.  (Am. Compl. ¶¶ 106–113, Doc. No. 20); ERISA § 406(a)-(b), 29 U.S.C. § 1106(a)-(b).

- Count III: The Trustee and Committee Defendants breached their fiduciary duties by authorizing the forced sale because the sale failed to follow Plan § 11.2, which prohibits any plan transfers that decrease the value of the Plan.  (Am. Compl. ¶¶ 114–121, Doc. No. 20); ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

- Count IV: The Trustee and Committee Defendants breached their fiduciary duties by misrepresenting that terminated employee participants could hold Wawa stock in their ESOP accounts until age 68.  (Am. Compl. ¶¶ 122–128, Doc. No. 20); ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

- Count V: Wawa breached ERISA's anti-cutback provision by eliminating terminated employees' rights to hold Wawa stock in the ESOP through age 68.  (Am. Compl. ¶¶ 129–140, Doc. No. 20); ERISA § 204(g), 29 U.S.C. § 1054(g).

- Count VI: Defendants violated ERISA by unilaterally amending the terms of the Plan.  (Am. Compl. ¶¶ 141–146, Doc. No. 20); ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3).

- Count VII: The Committee Defendants violated ERISA by furnishing SPDs that were materially misleading.  (Am. Compl. ¶¶ 147–153, Doc. No. 20); ERISA § 102, 29 U.S.C. § 1022.

- Count VIII: Wawa breached its fiduciary duties by failing to monitor the Trustee and Committee Defendants' activities.  (Am. Compl. ¶¶ 154–159, Doc. No. 20); ERISA § 404(a), 29 U.S.C. § 1104.

- Count IX: Invalidation of the indemnification provision.  (Am. Compl. ¶¶ 160–165, Doc. No. 20); ERISA  § 410; 29 U.S.C. § 1110(a).

Plaintiffs contend that they are "entitled to sue the fiduciaries pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) for relief on behalf of the Plan as provided in ERISA §409, 29 U.S.C. §1109."  (Am. Compl. ¶ 166, Doc. No. 20.)  They further contend that they are entitled to relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  (Am. Compl. ¶ 167, Doc. No. 20.)

### *Procedural Background*

On June 13, 2016, Defendants moved to dismiss all counts of the Amended Complaint. (Doc. No. 31.)  On September 15, 2016, the Parties held an all-day private mediation session with Michael Young, Esq. of JAMS, who is experienced in mediating ESOP class actions. (Barton Decl. ¶ 2, Doc. No. 126-2.)  The mediation was not successful.  (Id. ¶ 3.)

On October 6, 2016, after extensive briefing by the Parties, I largely denied Defendants' Motion to Dismiss.  (Doc. No. 58.)  Defendants moved for reconsideration, or alternatively for certification of an interlocutory appeal.  (Doc. No. 63.)  On January 11, 2017, I denied Defendants' Motion.  (Doc. No. 84.)

I directed the Parties to conduct discovery related to class certification.  (Doc. No. 56.) Plaintiffs completed discovery on issues relating to class certification, and also obtained merits-related documents and testimony that overlapped with class certification discovery.  (Barton

Decl. ¶ 4, Doc. No. 126-2.)  The Parties exchanged over three thousand pages of documents and took eight depositions (the three Class Representatives and five Wawa representatives).  (Id.)  Plaintiffs also obtained extensive documents from Defendants' financial and legal advisors respecting the 2015 Amendment and valuation of Wawa stock.  (Id. ¶ 5.)

On December 14, 2016, Plaintiffs moved for class certification; Defendants vigorously contested certification as to Counts IV, VI, and VII.  (Doc. Nos. 75, 77, 85, 87.)  I held a hearing on January 30, 2017.

In March 2017—before I made any class certification decision—the Parties informed my Chambers that they were conducting a second private mediation.  Before the mediation, the Parties exchanged additional documents and data that allowed for an assessment of the proposed Class's potential recovery.  (Barton Decl. ¶ 7, Doc. No. 126-2.)  Plaintiffs hired two damages experts and the Parties exchanged expert reports respecting potential monetary recovery.  (Id.)  The Parties made substantial progress toward settlement during a second mediation in May 2017, ultimately reaching a proposed agreement.  (Id. ¶ 8.)  The Parties executed the Settlement Agreement on December 29, 2017.  (Id.)  That same day, Plaintiffs filed an unopposed renewed Motion for Class Certification, and an unopposed Motion for Preliminary Approval of the Settlement Agreement.  (Doc. Nos. 106, 107.)

On May 1, 2018, after a preliminary approval hearing, I conditionally certified the Settlement Class under Rule 23(b)(1) and (b)(2) as to Counts I–III and V–IX, appointed Class Representatives and Class Counsel, granted preliminary approval of the Settlement and proposed Plan of Allocation, and appointed Dahl Administration as the Settlement Administrator.  (Doc. No. 120.)  Plaintiffs moved for final approval of the Settlement Agreement, and for approval of an award of attorneys' fees and incentive awards.  (Doc. Nos. 121, 126.)  I conducted a final

approval hearing on August 9, 2018.

## II.   DISCUSSION

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "While the law generally favors settlement in complex or class action cases for its conservation of judicial resources, the court has an obligation to ensure that any settlement reached protects the interests of the class members."  In re Aetna Inc. Sec. Litig., MDL No. 1219, 2001 WL 20928, at *4 (E.D. Pa. Jan 4, 2001) (citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig., 55 F.3d 768, 784 (3d Cir. 1995)).

### A.  Settlement Class Certification:  Rule 23 Analysis

On May 1, 2018, I conditionally certified the following Settlement Class under Rule 23(b)(1) and (b)(2) as to Counts I, II, III, V, VI, VII, VIII, and IX:

> All persons who were Terminated Employee Participants in the ESOP as of January 1, 2015 with account balances greater than $5,000.00 and the beneficiaries of such participants and any Alternate Payees whose stock in the Wawa ESOP was liquidated pursuant to 2015 Plan Amendment (i.e. Plan Amendment No. 4).

(Doc. No. 120 at 5.)  Terminated Employee Participants means "participants in the Wawa, Inc. Employee Stock Ownership Plan with vested account balances as of August 30, 2015 whose employment with Wawa, Inc. terminated prior to January 1, 2015 for any reason other than retirement, death or disability."  (Stip. To Class Cert., Doc. No. 75.)  Defendant trustees and members of the Defendant Committee and their immediate families, the current officers and directors of Defendant Wawa and their immediate families, and their legal representatives, successors, heirs, and assigns are excluded from the Proposed Class.  (Id.)

No Class Member has objected to class certification.  For the reasons that follow and

solely for the purpose of settlement in accordance with the Settlement Agreement, I will now finally certify the Settlement Class with respect to Counts I, II, III, V, VI, VII, VIII, and IX.

### Rule 23(a) Requirements

The Settlement Class meets all four Rule 23(a) requirements: "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  In re Corel Corp. Secs. Litig., 206 F.R.D. 533, 539 (E.D. Pa. 2002).

First, as Defendants have identified some 1,260 participants who are members of the Settlement Class, the Class is so numerous that joinder of all its members is plainly impracticable.  Fed. R. Civ. P. 23(a)(1); see also In re Modafinil Antitrust Litig., 837 F.3d 238, 249–50 (3d Cir. 2016) ("Generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met" (quoting Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001))).

Second, as I explained in my Preliminary Certification Order, this matter presents at least the following classwide questions of law or fact:  (1) whether the 2015 Plan Amendment is valid under the terms of the Plan and under the law; (2) whether the $6,940 per share paid to each Class Member was less than the fair value of the shares; and (3) whether the SPDs were materially misleading.  See Fed. R. Civ. P. 23(a)(2); see also In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig., 795 F.3d 380, 399 (3d Cir. 2015) (commonality requirement satisfied where the plaintiffs "alleged that the class was subjected to the same kind of illegal conduct by the same entities, and that class members were harmed in the same way, albeit to potentially different extents").

Third, the claims and defenses of the Class Representatives are typical of the claims of the Class, and their interests align with those of absent Class members.  Fed. R. Civ. P 23(a)(3).

The Class Representatives were all participants in the ESOP until their shares were liquidated following the 2015 Amendment.  Their shares were sold at the same price, pursuant to the same valuation process, and in the same circumstances as every other Settlement Class Member. Accordingly, the Class Representatives' claims typify those of the Class.  See Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 598 (3d Cir. 2012) ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." (quoting Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992))).

Finally, the Class Representatives and Class Counsel have "fairly and adequately protect[ed] the interests of the Class."  Fed. R. Civ. P. 23(a)(4).  The Class Representatives' interests do not conflict with the interests of the other Class Members.  See Gates v. Rohm & Haas Co., 248 F.R.D. 434, 441 (E.D. Pa. 2008) (inquiring into "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class" (citations and quotations omitted)).  Accordingly, I will finally appoint Greg Pfeifer, Andrew Dorley, and Michael DiLoreto as Class Representatives.  In addition, Class Counsel has pursued this lawsuit vigorously and has demonstrated sufficient knowledge and experience in ERISA matters, thus satisfying the requirements of Rule 23(g).

### Rule 23(b) Requirements

As I explained in my Preliminary Certification Order, I will certify the Settlement Class under Rule 23(b)(1) and (b)(2).

First, the Class may be certified under Rule 23(b)(1)(B) because prosecuting separate actions would create a risk of adjudications that "as a practical matter, would be dispositive of

the interests of the other members not parties to the individual adjudications." Fed. R. Civ. P. 23(b)(1). "[G]iven the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief." In re Ikon Office Solutions, Inc. Sec. Litig., 191 F.R.D. 457, 466 (E.D. Pa. 2000); see also In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 604 (3d Cir. 2009) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held."); Mehling v. New York Life Ins. Co., 246 F.R.D. 467, 476 (E.D. Pa. 2007) ("Because Plaintiffs are alleging a breach of fiduciary duty, any finding as to Defendants' alleged breach in an individual suit will affect the interests of Plan participants not parties to the suit.").

I will also certify the Class under Rule 23(b)(2) because, by effectuating the Plan Amendment, Defendants have "acted or refused to act on grounds that apply generally to the class, so that the final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Defendants acted on the same grounds as to all Class Members by implementing the 2015 Plan Amendment, using the same valuation in buying back ESOP shares, and making identical representations in the SPDs. See Cottillion v. United Refining Co., No. 09-140E, 2013 WL 5936368, at *6 (W.D. Pa. Nov. 5, 2013) ("Courts routinely have certified classes pursuant to [Rule 23(b)(2)] where . . . an ERISA plan administrator makes a uniform decision about administering the Plan as it applies to the putative class members." (internal citation omitted)), aff'd, 781 F.3d 47 (3d Cir. 2015).

Plaintiffs seek "a declaration and an order requiring that [C]lass [M]embers' benefits be calculated either under the terms of the Plan without the 2015 Plan Amendment or liquidated at

fair market value."  (Pl.'s Mem. in Support of Mot. for Class Cert. Mot. 21, Doc. No. 115-1.)

Although the "remedy of plan losses [will] involve monetary relief" unique to each Class

Member, this relief "stem[s] directly from the claim seeking declaratory relief" respecting the

Class as a whole.  Mehling, 246 F.R.D. at 476; see also Johnson v. Meriter Health Servs.

Employee Retirement Plan, 702 F.3d 364, 371 (7th Cir. 2012) (Rule 23(b)(2) certification is

proper where class sought "a declaration of the rights that the plan confers" and "the award of

monetary relief" consisted of "laying each class member's pension-related employment records

alongside the text of the reformed plan and computing the employee's entitlement" so that "the

monetary relief [was] merely 'incidental' to the declaratory relief").

### B.  Notice

I must "determine that notice was appropriate before evaluating" the settlement on its

merits.  Alexander v. Washington Mut., Inc., No. 07-4426, 2012 WL 6021098, at *6 (E.D. Pa.

Dec. 4, 2012).  There are no objections to the Class Notice or its implementation.

On May 1, 2018, I ruled that the Notice of Class Action Settlement and the proposed

method of notice satisfied the requirements of Rule 23(e) and due process, and were otherwise

fair and reasonable.  (Doc. No. 120 at 13–14.)

After I preliminarily certified the Class, the distribution of the Notice was implemented in

accordance with the terms of my Preliminary Approval Order.  Defendants provided Settlement

Administrator Dahl Administration with the Class Members' contact information.  (Kratz Aff. ¶

4, Doc. No. 122.)  Dahl distributed the Notice to all Class Members via first class mail and, if

available, by email as well.  (Id. ¶ 6.)  The Class Notice adequately informed Class Members of:

(1) the nature of the litigation; (2) the definition of the Class; (3) a summary of the Settlement

Agreement; (4) Class Counsel's intent to request attorneys' fees, expenses, and service awards

for Class Representatives; (5) the time and place of the fairness hearing; (6) how to raise an objection to the Settlement; and (7) how to obtain further information.  (See Class Notice, Doc. No. 122-1.)  On June 10, 2018, Class Counsel held a town hall meeting to address questions or concerns about the Settlement from Class Members.  (Barton Decl.  ¶ 10, Doc. No. 126-2.)

In these circumstances, I conclude that the Class Notice and distribution of that Notice fully satisfied the requirements of Rule 23(e) and due process.  See Lachance v. Harrington, 965 F. Supp. 630, 636 (E.D. Pa. 1997) ("In order to satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

### C.  Fairness, Adequacy, and Reasonableness of Proposed Settlement

Under Rule 23, I may approve a settlement where, as here, it is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).  The Settlement Agreement provides for a cash payment of $25 million—less Class Counsel's fees and costs and incentive payments to the Class Representatives—to the Wawa, Inc. Employee Stock Ownership Plan.  (Pl.'s Unopposed Mot. for Prelim. Approval of Class Action Settlement at 1,  Doc. No. 116-1.)  This payment will be allocated on a *pro rata* basis among the Class Members, based on shares held in September 2015, amounting to approximately $943 per share.  (Id. at 1, 5.)  Class Members may receive a distribution of their settlement allocations or roll over the allocations to an IRA or another qualified pension plan.  (Id.)  In exchange, the Class Members will release and dismiss with prejudice all claims related to this action and the 2015 Plan Amendment against Defendants and Defendants' insurers.  (Id. at 6; see also Scott v. Bimbo Bakeries USA, Inc., No. 10-3154, 2015 WL 8764491, at *3 (E.D. Pa. Dec. 15, 2015) ("It is settled law within this Circuit that 'a judgment pursuant to a class settlement can bar later claims based on the allegations underlying

the claims in the settled class action.'" (quoting In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 366 (3d Cir. 2001))).

### *Presumption of Fairness*

A proposed class action settlement should be afforded a presumption of fairness if: (1) settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.  In re Cendant Corp. Litig., 264 F.3d 201, 232 n.18 (3d. Cir. 2001); In re CertainTeed Fiber Cement Siding Litig., 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("The presumption of fairness may attach even where a class is certified for settlement purposes only . . . .").  Here, the Settlement is entitled to a presumption of fairness because:  (1) the Parties' Agreement is the result of vigorous, bona fide, arm's length negotiations; (2) the Parties conducted significant discovery as to both class certification and the merits; (3) Class Counsel have demonstrated that they are experienced in litigating ERISA class actions; and (4) only two of some 1,260 Class Members have objected to the Settlement Agreement.

### The *Girsh* and *Prudential* Factors

The Third Circuit has identified nine factors to assist courts in determining whether a class action settlement should be approved as "fair, adequate and reasonable."  Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975).  These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

In re Cendant, 264 F.3d at 232.  When appropriate, courts should also consider:

(10) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (11) the existence and probable outcome of claims by other classes and subclasses; (12) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (13) whether class or subclass members are accorded the right to opt out of the settlement; (14) whether any provisions for attorneys' fees are reasonable; and (15) whether the procedure for processing individual claims under the settlement is fair and reasonable.

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998) (numbers added).  Applying these factors, I conclude that the Settlement is fair, adequate, and reasonable.

*Factor One: Complexity, Expense, and Likely Duration of Litigation*

This factor supports the Settlement Agreement.  Like all ERISA matters, this case is quite complex.  See Wachtel v. Health Net, Inc., 482 F.3d 225, 237 (3d Cir. 2007) ("ERISA is an enormously complicated statute."); (see also Final Approval Hr'g Tr. 6:3–6, Doc. No. 132 ("ERISA actions are notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases.").)  The Parties' briefing on Defendants' Motions to Dismiss and for Reconsideration revealed thorny disputed issues, including questions of valuation and whether Plaintiffs had the right to retain Wawa stock.  Cf. In re Ikon Office Sols., Inc. Sec. Litig., 209 F.R.D. 94, 104 (E.D. Pa. 2002) (approving settlement where there were "numerous [pending] complex issues" under ERISA).

Had the Parties not reached a Settlement Agreement, Plaintiffs would have continued merits discovery, and likely would have deposed at least eleven fact witnesses (in addition to the eight individual Defendants) and additional expert witnesses.  (Pl.'s Mot. for Final Approval of Class Action Settlement at 10, Doc. No. 126-1; Hr'g Tr. 6:11–14, Doc. No 132.)  Defendants

would likely have moved for summary judgment.  (Pl.s Mot for Final Approval at 10, Doc. No. 126-1.)  Moreover, trial would have been long and complex and the non-prevailing Parties may have taken an appeal. (Id.)   Accordingly, the Parties will benefit from the time and resources saved by avoiding further litigation.  See Fleisher v. Fiber Composites, LLC, Civ. No. 12-1326, 2014 WL 866441, at *11 (E.D. Pa. Mar. 5, 2014).

*Factor Two: The Reaction of the Class to the Settlement*

As I have explained, Dahl Administration distributed the Notice to 1,264 Class Members via first class mail and, where available, by email.  Of the 1,264 Notices mailed, only sixteen packets were returned as undeliverable; Dahl subsequently obtained an updated address for one of these Class Members.  (Kratz Aff. ¶ 7, Doc. No. 122.)  In addition, of the 609 Notices sent by email, 584 emails were successfully delivered.  (Id.)  Only two Class Members have objected to the Settlement Agreement—less than one percent of the Class.  See In re Cendant, 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."); see also Chakejian v. Equifax Info. Servs., LLC, 275 F.R.D. 201, 212 (E.D. Pa. 2011) ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" (internal citation omitted)).  Moreover, Class Counsel has explained that most of the feedback received (both during the town hall meeting and in subsequent conversations with Class Members) was favorable.  (Hr'g Tr. 17:7–11, Doc. No. 132; see also Barton Decl. ¶ 10, Doc. No. 126-2.)  Accordingly, this factor favors the Settlement.

*Factor Three: The Stage of the Proceedings and the Amount of Completed Discovery*

I must next consider "the degree of case development that class counsel have accomplished prior to settlement," and whether Class Counsel appreciated the merits of

Plaintiffs' case before settlement negotiations.  In re Gen. Motors, 55 F.3d at 813.  As I have explained, Defendants' Motion to Dismiss and Motion for Reconsideration conveyed to Plaintiffs the multitude of issues and defenses raised here.  At the time of the Parties' second mediation, they had completed substantial class discovery (which overlapped with the merits) and fully briefed class certification.  Although merits discovery had not been completed, Plaintiffs obtained additional documents and data related to the merits to facilitate this Settlement.  Moreover, Plaintiffs hired two experts to assist in assessing damages.  Accordingly, Class Counsel had "sufficient evidence to conduct meaningful, arms-length negotiations reflecting the relative strengths of the claims."  Mehling v. New York Life Ins. Co., 248 F.R.D. 455, 460 (E.D. Pa. 2008).  This factor weighs in favor of Settlement.

> *Factors Four, Five, and Six: The Risks of Establishing Liability, Proving Damages, and Maintaining the Class Action Through Trial*

I must next "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement.'"  In re CertainTeed, 303 F.R.D. at 217 (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004) (addressing factors four through six together).  During the Final Approval Hearing, Class Counsel conceded that Plaintiffs had risks "on class, liability, and relief."  (Hr'g Tr. 7:22–24, Doc. No. 132.)   The Settlement Agreement was reached after briefing was completed on certification, but before Plaintiff's Motion for Class Certification was decided. Defendants "vigorously opposed certification on the counts . . . that would have restored [Class Members] to their stock or allowed them to [recover] based on the right to continue to hold stock"—the claims that would have yielded a greater recovery.  (Hr'g Tr. at 8:2–5, Doc. No. 132.)  As there is no guarantee that the Class would have been certified as to all Counts, the Parties' decision to settle avoids risks attendant to class certification.

15

Moreover, as I have explained, Defendants submitted a substantial Motion to Dismiss, and may well have pursued summary judgment.  The Independent Fiduciary retained by Wawa also concluded that "the [l]itigation would have been ongoing, hardfought and risky for an extended period of time" in light of the "strong defense arguments."  (Saakvitne Independent Fiduciary Report at 8, Doc. No. 126-3.)  Finally, as Mr. Barton stated, "valuation issues are notoriously difficult" and involve a "quintessential battle of the experts."  (Hr'g Tr. at 8:9–13, Doc. No. 132.)  Plaintiffs thus would also have faced substantial challenges in establishing remedies.  See Mehling, 248 F.R.D. at 461 ("[D]etermining the amount of loss to the Plans would be complex and highly contested" where "proving damages would involve a 'battle of the experts.'").

Accordingly, as the risks respecting class certification, liability and damages are outweighed by the immediate benefits of the Settlement Agreement, these factors weigh in favor of settlement.

*Factor Seven: Ability of Defendant to Withstand a Greater Judgment*

Plaintiffs "reached the Settlement Agreement based on the strengths and weaknesses of the case without regard to Defendants' ability to pay the full amount of a greater judgment." (Pl.'s Mot. for Final Approval at 14, Doc. No. 126-1.)  This factor weighs against the settlement, although not substantially so.  Cf. In re Flonase Antitrust Litig., 951 F. Supp. 2d 739, 744–745 (E.D. Pa. 2013) ("I follow my district court colleagues within the Third Circuit who 'regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts.'" (quoting Bredbener v. Liberty Travel, Inc., Civ. No. 09-905 (MF), 2011 WL 1344745, at *15 (D.N.J. Apr. 8, 2011))); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011) ("[T]his factor is most clearly relevant where a settlement in a given case is less

16

than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement.").

> *Factors Eight and Nine: Range of Reasonableness of Settlement Fund in Light of Best Possible Recovery and Attendant Risks of Litigation*

These final *Girsh* factors are intended to "'evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case.'"  In re CertainTeed, 303 F.R.D. at 218 (internal quotation omitted).  The Settlement Agreement provides substantial monetary relief to the Class Members: almost $1,000 per share (before deducting fees and costs), which will be distributed to the Class almost immediately.  With respect to the potential recovery, Plaintiffs had two alternative theories of recovery in this matter:  (1) recovery based on the fair market value of the Wawa stock liquidated in September 2015; and (2) recovery based on the "present value" (as of the breach in 2015) of the right to continue holding Wawa stock until age 68. (Feinberg Decl. ¶ 6, Doc. No. 116-2.)  The Class was more likely to recover under the former theory, but the latter theory would have resulted in a larger recovery.  (See id.)  Moreover, as I have discussed, Defendants opposed class certification of the claims that would have resulted in recovery under the latter, more difficult theory.

Plaintiffs retained two experts to assist with determining the monetary value of the Class's claims under these alternative theories and concluded that the maximum recovery under the first theory was some $50 million, and the maximum recovery under the second theory was some $100 million.  (Id.)  The $25 million settlement thus represents 25 percent of the best possible recovery under the more difficult theory, and 50 percent of the best possible recovery under the less difficult theory.  The Settlement thus falls well within the range of reasonableness when considering the risks of continued litigation.  See McDonough v. Toys R Us, Inc., 80 F. Supp. 3d 626, 646 (E.D. Pa. 2015) (settlement that represented approximate 24 percent of

estimated actual damages was reasonable; this Court has "upheld far smaller settlements"). This factor weighs in favor of settlement.

### *Objections*

*Pro se* Class Members Brad Wall and Christine Castagna objected to the Settlement Agreement at the Final Approval Hearing. None of their objections impugns the reasonableness of the Settlement. See In re CertainTeed, 303 F.R.D. at 216 ("[O]bjectors bear the burden of proving any assertions they raise challenging the reasonableness of [the] class action settlement." (internal citation omitted)).

Mr. Wall argued that "the lawsuit did not take issue with the retirement definition introduced in the [2015] ESOP amendment." (Id. at 30:15–17.) According to Mr. Wall, the 2015 Amendment deemed employees "retirees" if they retired either at "age 50 with 25 years" or "age 62 with 15 years." Mr. Wall—who retired at "age 58 with 20 years" did not meet the definition. (Id. at 30:22–25.) As a "terminated" employee (rather than a "retiree"), he was not allowed to keep his stock, and objected that "there should have been some special dispensation for people like [him] because of this criteria that was adopted retroactively." (Id. at 31:1–6.) Class Counsel responded that this objection is "subsumed in [Plaintiffs'] claim . . . that there was a group of people who were classified as terminated employee participants [and did not meet the] new definition of retiree, and those were the people . . . who were going to have their stock immediately liquidated." (Id. at 35:6–13.) Mr. Wall's disagreement with "the new definition of retirement" is "exactly why he's in this class." (Id. at 35:12-13.) To the extent that Mr. Wall believes that he should be treated differently from other "Terminated Employee" Class Members, he does not explain why there should be a "special dispensation for people like [him]"; rather, as a "Terminated Employee" forced to sell his shares, Mr. Wall's losses are the

same as all other Class Members.  Accordingly, I will overrule the objection.

Mr. Wall also objected that he "was not able to participate in the [litigation] process" because he did not learn that he was a Class Member until after the Settlement Agreement had been reached.  (Wall Letter 1-2, Doc. No. 124; Hr'g Tr. at 31:7–22, Doc. No. 132.)  As Class Counsel pointed out, there has been media coverage of this case and information has been posted on Class Counsels' websites since it was filed in February 2016.   Moreover, "[t]here was nothing stopping [Mr. Wall] from filing his lawsuit at any point, up into preliminary approval," but "[h]e chose not to take that action."  (Hr'g Tr. 36:13–21, Doc. No. 132.)  Finally, Class Counsel was unable to contact the Class Members before certification, as they did not have the Members' contact information until that time.  (Id. at 35:24–36:4.)  Accordingly, I will overrule the objection.

Although Ms. Castagna did not properly file her objection in accordance with the procedure described in the Class Notice, I allowed her to present her objections at the hearing.  (Id. at 37:14–38:1.)  The bulk of Ms. Castagna's objections restate allegations made in Plaintiffs' Amended Complaint.  She objected that:  (1) in the 2015 Amendment, Wawa "said they needed [to buy back] the shares to give to current employees" but "[t]hat didn't happen," (id. at 38:2–4; compare Am. Compl. ¶ 57, Doc. No. 20); (2) "when [Wawa] got [its employees] to buy in [to the ESOP]," they said the employees could keep their shares until age 68, (Hr'g Tr. at 38:20–21, Doc. No. 132; compare Am. Compl. ¶ 34, Doc. No. 20); (3) plan documents "stated that no amendments to the plan can divest [employees] of any entitlement to a benefit,"  (Hr'g Tr.at 38:23–25, Doc. No. 132; compare Am. Compl. ¶¶ 38, 41, Doc. No. 20.); (4) "before [she] got forced out, the Wood family owned 47.5 percent, but afterwards, the Wood family owned 50.2 percent," (Hr'g Tr. at 39:20–23, Doc. No. 132; compare Am. Compl. ¶¶ 27, 59, 60, Doc. No.

20.); and (5) in 2004, she used "100 percent of [her] [401(k)] money" to help Wawa "buy back the 27 percent of the company they did not own," but Wawa doesn't "want [her] to reap the benefits," (Hr'g Tr. at 39:24–40:12, Doc. No. 132; <u>compare</u> Am. Compl. ¶ 40, Doc. No. 20). As these are objections to Defendants' alleged conduct, rather than the Settlement Agreement, I will overrule them.

Finally, both Mr. Wall and Ms. Castagna objected to the valuation in the Settlement. Mr. Wall contends that "the [Settlement's] valuation . . . is grossly understated" as "Wawa stock has significantly outperformed virtually any other investment for many years." (Letter from Brad C. Wall ("Wall Letter") 1, Doc. No. 124.) He argues that based on Wawa's "consistent annual growth rate" of 16 percent, he has suffered a loss of $2.4 million, but will only receive some $206,000 under the settlement. (<u>Id.</u>; Hr'g Tr. 28:1–29:4, Doc. No. 132.) Mr. Wall challenges Plaintiffs' estimate of the Class's recovery potential, employing his 16 percent growth rate to argue that the best possible recovery (depending on the age of the Class Member) is between $236 million and $1.7 billion. (Hr'g Tr. 29:12–30:10, Doc. No. 132.)

Ms. Castagna similarly alleges that because her 100 shares are now worth $3,000 more than they were worth in 2015, she has already "missed out on a gain of $300,000." (Hr'g Tr. at 41:10-16, Doc. No. 132.) Moreover, because Wawa shares have increased in value from $888 per share in 2004 (when she purchased most of her stock), to $7,000 per share in 2015 (when she sold her stock), she estimates that under that rate of return her shares will be worth $5.6 million in 11 years. (<u>Id.</u> at 42:18-43:2.) Accordingly, she objects that she will receive only approximately $76,000 under the proposed settlement. (<u>Id.</u> at 41:12.)

There are several problems with both Objectors' challenges to Plaintiffs' valuation of the Class's claims. First, both Objectors assume that the Class would be entitled to recover based on

the present value of the right to continue holding Wawa stock until age 68.  As I have explained, this valuation method is the more difficult of Plaintiffs' two theories of recovery.   Indeed, Defendants have vigorously opposed class certification on the claims that would have resulted in a recovery based on this theory.   Moreover, the Objectors' valuation method is flawed. Plaintiffs' expert assessed the potential recovery using the Black-Scholes model, a complex mathematical formula which includes, *inter alia*, the number of years until the stock option expires (using the Members' birth dates), the volatility of the stock, and past dividend payments. (Hr'g Tr. 32:21–33:16, Doc. No. 132; <u>see also</u> Pl.'s Mot. for Final Approval at 19, Doc. No. 126-1.)  By contrast, the Objectors have improperly relied on past growth rates to calculate future recovery.  <u>See</u> <u>In re Unisys Sav. Plan Litig.</u>, No. 91-3067, 1997 WL 732473, at *23 (E.D. Pa. Nov. 24, 1997) ("Hindsight cannot play a role in determining whether a fiduciary's actions were prudent. Whether a trustee has acted properly in selecting an investment depends upon the circumstances at the time when the investment is made and not upon subsequent events." (citations omitted)), <u>aff'd,</u> 173 F.3d 145 (3d Cir. 1999).  As Class Counsel explained, this type of damages calculation would be very difficult to maintain at trial.  (<u>See</u> Hr'g Tr. 34:5-12, Doc. No. 132.)  Finally, the Objectors fail to consider that "[a] settlement is, after all, not full relief but an acceptable compromise."  <u>Henderson v. Volvo Cars of N. Am., LLC</u>, No. 09-4146, 2013 WL 1192479, at *9 (D.N.J. Mar. 22, 2013) ("Objections based solely on the amount of the award lack merit.").  Accordingly, I will overrule the objections.

### *Prudential* Factors

To the extent that they are relevant, the *Prudential* factors also support the Settlement Agreement:   the litigation was sufficiently advanced that Class Counsel could assess the probable outcome of a trial; Class Counsel's requested attorneys' fees are reasonable (as I will

describe below); and the procedure for distribution is reasonable, as the Settlement will be distributed automatically through the Wawa ESOP, allowing Class Members to elect how they would like their funds distributed.  Although the Class Members are not able to opt out of the Settlement, as I have explained, this matter was appropriate for certification pursuant to Rule 23(b)(1) and (b)(2).

In sum, upon review of the record and settlement documents, and after considering all objections, conducting two hearings, and applying the *Girsh* and *Prudential* factors, I find that the Settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2); see also In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 444 (3d Cir.), as amended (May 2, 2016) ("In the end, this settlement was the bargain struck by the parties, negotiating amid the fog of litigation.  If we were drawing up a settlement ourselves, we may want different terms or more compensation . . . . But our role as judges is to review the settlement reached by the parties for its fairness, adequacy, and reasonableness.").

Accordingly, I will grant final approval of the Settlement pursuant to Rule 23(e).

### *Approval of Proposed Allocation Plan*

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate."   In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 184 (E.D. Pa. 2000) (internal citation omitted).  Here, each Class Members' share of the Net Settlement Amount is determined based on the number of shares held in his or her ESOP account as of September 2015.  Accordingly, the Settlement will be distributed to each Class Member based on the extent of his or her losses as a result of the liquidation.  The Allocation Plan thus is fair, reasonable, and adequate.  See Mehling, 248 F.R.D. at 463 ("Generally, a plan

that reimburses class members based on the nature and extent of their injuries is considered reasonable." (internal citation omitted)).

### D. Fairness and Reasonableness of the Requested Attorneys' Fees, Costs, and Service Awards for Class Representatives

Plaintiffs have asked me to approve attorneys' fees of $5,000,000, costs of $80,123, and service awards of $25,000 to each Class Representative.   There are no objections to these requests.

#### *Attorneys' Fees*

Having previously appointed Class Counsel in my May 1, 2018 Order, I must now conduct a "thorough judicial review" of their fee application.  (Pl.'s Mot. for Attys' Fees, Litig. Expenses and Class Rep. Serv. Awards, Doc. No. 121); Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 192 (3d Cir. 2000) (quoting In re Prudential, 148 F.3d at 333).  During the August 9, 2018 hearing, I ordered Plaintiffs to submit additional briefing respecting the fee request.  (See Doc. No. 129.)  Plaintiffs have thus submitted extensive briefing—including eight declarations— with respect to the reasonableness of the award.  (See Pl.'s Mot. for Attys' Fees,  Doc. No. 121; Pl.'s Mem. in Support of Pl.'s Mot. for Attys' Fees, Doc. No. 131.)

"There are two basic methods for calculating attorneys' fees—the percentage-of-recovery method and the lodestar method."  In re Prudential, 148 F.3d at 333.  The percentage-of-recovery method—which compares the amount of attorneys' fees sought to the total size of the fund—"is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" Sullivan v. DB Inv., Inc., 667 F.3d 273, 330 (3d Cir. 2011) (quoting In re Rite Aid Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005) as amended (Feb. 25, 2005)).   In determining whether the requested fee award is reasonable under the percentage-of-recovery approach, I must consider:

> (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by class members to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time plaintiffs' counsel devoted to the case; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement; and (10) any innovative terms of settlement.

In re Diet Drugs, 582 F.3d 524, 541 (3d Cir. 2009) (citing Gunter, 223 F.3d at 195 n. 1, and In re Prudential, 148 F.3d at 336–40); see also Gunter, 223 F.3d at 195 n.1 ("The factors . . . need not be applied in a formulaic way.  Each case is different, and in certain cases, one factor may outweigh the rest.").

The lodestar method "is then used 'to cross-check the reasonableness of a percentage-of-recovery fee award.'"  Sullivan, 667 F.3d at 330 (quoting In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006)); see also In re Rite Aid, 396 F.3d at 307 ("[T]he lodestar cross-check does not trump the primary reliance on the percentage of common fund method.").

*Percentage-of-Recovery and Gunter Factors*

The *Gunter* factors support the fee award.  I will address briefly each factor here, as I have already considered the bulk of these factors in approving the Settlement Agreement.

First, the Settlement confers benefits on each of the 1,264 Class Members, amounting to nearly $20,000 per Member.  As I have explained, this Settlement is reasonable in light of the potential Class recovery.  Second, there are only two  objectors to the Settlement, whose objections I have overruled, and no objections to the requested attorneys' fees and costs. With respect to the third and fourth factors, Class Counsel skillfully and vigorously prosecuted this complex ERISA matter, and have submitted declarations documenting their experience in handling similar matters.  (See Feinberg Decl., Doc. No. 121-2; Feinberg Supp. Decl., Doc. No.

131-1; Barton Decl., Doc. No. 121-5; Barton Supp. Decl., Doc. No. 131-2; Donahoo Decl., Doc. No. 121-6; Donahoo Supp. Decl., Doc. No. 131-4; Handorf Decl., Doc. No. 121-7; Azorsky Decl., Doc. No. 131-5; Porter Decl., Doc. No. 131-6; Preminger Decl., Doc. No. 131-7; Corrigan Decl., Doc. No. 131-8.)   As I have explained, Class Counsel responded to Defendants' substantial Motion to Dismiss (which I largely denied) and subsequent Motion for Reconsideration; conducted substantial discovery on certification, the merits, and in preparation for mediation; extensively briefed Class Certification; and participated in two mediations with Defendants before the Parties reached this Settlement.   Absent the work of Class Counsel, most Class Members would likely have obtained no recovery.   See In re Linerboard Antitrust Litig., No. CIV.A. 98-5055, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004) ("The result achieved is the clearest reflection of petitioners' skill and expertise.").   Fifth, Class Counsel have litigated this matter on a contingency basis, facing the risk of nonpayment if Plaintiffs were not successful.   Sixth (as discussed below), Class Counsel spent a combined 2,700 hours working on this matter.   (Feinberg Supp. Decl. ¶ 6, Doc. No. 131-1.)   Seventh, the $5 million award represents 20 percent of the common fund.   (Pl.'s   Mem. in Support of Mot. Support of Pl.'s Mot. for Attys' Fees at 4, Doc. No. 131).   This requested fee award falls well within the range of reasonableness.   See, e.g., Leap v. Yoshida, No. 14-3650, 2015 WL 619908, at *4 (E.D. Pa. Feb. 12, 2015) ("Fee awards in common fund cases generally range from 19% to 45% of the fund."); In re Schering-Plough Corp. Enhance ERISA Litig., No. 08-1432, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) (same); In re Ikon, 194 F.R.D. at 194 ("The median in class actions is approximately twenty-five percent, but awards of thirty percent are not uncommon in securities class actions."); see also In re Datatec Sys., Inc. Sec. Litig., No. 04-CV-525 (GEB), 2007 WL 4225828, at *2 (D.N.J. Nov. 28, 2007) (approving $45,000 in costs and a fee equal to

30 percent of $750,000 settlement fund).   The eighth factor is irrelevant because there are no other groups.   Ninth, the requested fee is less than the amount Counsel would likely have received had this case been subject to a private contingency fee arrangement.   In re CertainTeed, 303 F.R.D. at 224 ("In private contingency fee cases, lawyers routinely negotiate agreements for between 30% and 40% of the recovery." (internal citation omitted)).   Finally, although the Settlement is straightforward, in that it allocates funds to Class Members on a *pro rata* basis based on shares held, it is also innovative because the allocation plan allows Class Members to roll over the payment to an IRA or another plan and thus take advantage of the tax benefits of a tax-qualified retirement plan.   (See Class Action Settlement Agreement 11, 15–17, 21, Doc. No. 116-3.)

*Lodestar Cross Check*

I will use the lodestar method "'to cross-check the reasonableness of a percentage-of-recovery fee award.'"  Sullivan, 667 F.3d at 330 (quoting In re AT&T, 455 F.3d at 164).  I must multiply "the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys."   In re Rite Aid, 396 F.3d at 305.   Here, the lodestar calculation is $1,855,431—2,702.1 hours at rates ranging from $235 to $910 per hour, with a blended hourly rate of approximately $685.   (See Pl.'s Mem. in Support of Pl.'s Mot. for Attys' Fees, Doc. No. 131); In re Rite Aid, 396 F.3d at 306–07 ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records."). Having reviewed the declarations submitted by Counsel, I am satisfied that these hourly rates are reasonable given the complexity of this ERISA action and the skill and experience of the

attorneys involved.  (<u>See</u> Porter Decl. ¶¶ 3, 4, Doc. No. 131-6 ("The handful of attorneys with expertise in ERISA class actions generally litigate cases in U.S. District Courts all over the country. . . ERISA class actions are complex cases requiring special expertise."); Preminger Decl. ¶ 13, Doc. No. 131-7 ("ERISA class actions usually require extensive research even for experienced attorneys, entail difficult discovery, and take many years to resolve. . . Because of these factors, attorneys must charge substantial fees.")); <u>see also</u> <u>In re Unisys Corp. Retiree Med.</u> <u>Benefits ERISA Litig.</u>, 886 F. Supp. 445, 477 (E.D. Pa. 1995) ("Similarly, the complex and difficult nature of this class action ERISA case demands a quality of service for which relatively expensive representation is to be expected.").  The rates, moreover, are "consistent with  . . . the national market for ERISA class action attorneys."  (Preminger Decl. ¶ 19, Doc. No. 131-7; <u>see</u> <u>also</u> Azorsky Decl. ¶ 5, Doc. No. 131-5 ("Based on my experience practicing as an attorney in complex commercial litigation in Philadelphia for 35 years . . . the above-referenced rates and fees are reasonable for this geographic area.")); <u>cf.</u> <u>Missouri v. Jenkins by Agyei</u>, 491 U.S. 274, 285 (1989) ("In determining how other elements of the attorney's fee are to be calculated, we have consistently looked to the marketplace as our guide to what is 'reasonable.'"); <u>Frommert v.</u> <u>Conkright</u>, 223 F. Supp. 3d 140, 151 (W.D.N.Y. 2016) ("I find that plaintiffs have demonstrated that the subject matter—ERISA benefits, involving numerous beneficiaries—required special expertise, that it was reasonable for plaintiffs to use out-of-district counsel, and that the hourly rates to be applied here are not strictly bound by what would be typical for counsel from this district."); <u>Amos v. PPG Indus., Inc.</u>, No. 2:05-70, 2015 WL 4881459, at *9 (S.D. Ohio Aug. 13, 2015) ("In ascertaining the proper community, district courts may look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases." (internal quotation marks and citation omitted)).

When Class Counsel's requested fee ($5,000,000) is divided by the lodestar calculation ($1,855,431), the lodestar multiplier is 2.7, well within the range of reasonableness.  See In re Prudential, 148 F.3d at 341 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (internal quotations omitted)); Martin v. Foster Wheeler Energy Corp., No. 06-0878, 2008 WL 906472, at *8 (M.D. Pa. Mar. 31, 2008) ("Lodestar multiples of less than four (4) are well within the range awarded by district courts in the Third Circuit.").  Again, this multiplier is justified by the complex nature of this ERISA class action, the skill and experience of Class Counsel; and the substantial relief obtained for the Class.  See In re Rite Aid, 396 F.3d at 306 ("Even when used as a cross-check, courts should explain how the application of a multiplier is justified by the facts of a particular case." (internal quotations omitted)).

In sum, I am satisfied that Class Counsel's requested fee award of $5 million is reasonable.

### Litigation Expenses

Class Counsel has requested reimbursement of $80,123 in costs and expenses.  Fed. R. Civ. P. 23(h).  This request comprises ordinary litigation expenses such as copying, attorney travel, consulting experts, process servers, court reports, deposition transcripts, and mediation fees.  (Supp. Feinberg Decl. ¶ 4, Doc. No. 127.)  I am satisfied that these expenses were reasonably and appropriately incurred during the two years in which Class Counsel has prosecuted this action.  See e.g., In re Ikon, 194 F.R.D. at 192 ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . .  reasonable litigation expenses from that fund." (emphasis in original)).  Accordingly, I will approve Class Counsels' request for reimbursement of expenses.

### *Service Awards for Class Representatives*

I have appointed Greg Pfeifer, Andrew Dorley, and Michael DiLoreto as Class Representatives.  Each Class Representative now seeks a $25,000 service award, to which there is no objection.  "The approval of contribution or incentive awards is common, especially when the settlement establishes a common fund."  In re CertainTeed, 303 F.R.D. at 225 ("'The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.'" (quoting Sullivan, 667 F.3d at 333 n.65)).

The Class Representatives have expended substantial time and effort on this litigation. They sought counsel to assist them (and other Class Members) in initiating this lawsuit and enforcing their rights against Wawa.  Throughout the litigation, they met with counsel on numerous occasions, were responsive by phone and email, provided relevant documents, attended the initial case conference, participated in the mediations, sat for depositions, and responded to Defendants' discovery requests.  In these circumstances, the $25,000 service award is reasonable and warranted.  See In re Linerboard, 2004 WL 1221350, at *19 ("[T]he amount requested, $25,000, is comparable to incentive awards granted by courts in this district and in other circuits.").

In sum, I will approve as reasonable the requests for attorneys' fees, reimbursement of litigation expenses, and service awards.

### III.    CONCLUSION

For the foregoing reasons, I will grant Plaintiffs' Motions for Final Approval of Class Action Settlement and for Attorneys' Fees, Litigation Expenses, and Class Representative Service Awards.  An appropriate Judgment follows.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

_____

August 31, 2018                                      Paul S. Diamond, J.